127 Ga. App. 284 (1972)
193 S.E.2d 166
TRAVIS MEAT & SEAFOOD COMPANY, INC. et al.
v.
ASHWORTH.
47109.
Court of Appeals of Georgia.
Argued April 4, 1972.
Decided September 18, 1972.
Rehearing Denied October 13, 1972.
Edwards, Awtrey & Parker, A. Sidney Parker, for appellants.
Raymond M. Reed, for appellee.
STOLZ, Judge.
W. W. Ashworth sued Travis Meat & Seafood Co., Inc., and Joe Arthur Hickey in the Superior Court of Cobb County. Thereafter the defendants served notice on the plaintiff that they would take the deposition of the plaintiff's physician, Dr. Paul J. Payne, for the purpose of discovery only. At the beginning of the deposition, the plaintiff's counsel insisted that the witness could not be cross examined and that, by taking the depositions, the defendants made Dr. Payne their witness. The taking of the deposition was suspended so the defendants could seek a protective order under the provisions of Code Ann. § 81A-130 (b) (Ga. L. 1966, pp. 609, 641; 1967, pp. 226, *285 233). The motion for protective order in substance sought to have the court declare: (1) that the defendants were entitled to take the depositions for the limited purpose of discovery, not to be later used as evidence: (2) that the plaintiff would not be entitled to examine the witness at the deposition hearing, but might, after giving notice, and at his own expense, examine the witness at another time; and (3) that the witness would not be the defendants' witness at said deposition hearing.
After argument of counsel, the court issued an order, the material parts of which are as follows: "Ordered that a protective order issue granting to defendants the right to take the deposition of Dr. Paul Payne for discovery. The court, however, exercises its discretion and declines to grant to defendants the authority to ask leading questions or to cross examine said witness." From this order the defendants appeal. Held:
The fundamental question before the court is whether discovery under Code Ann. § 81A-126 is to be governed by the rules pertaining to the eliciting of testimony of witnesses at the trial of the case.
The discovery law (Ga. L. 1959, p. 425) was initially placed in the evidence section of our Code (former Code Ch. 38-21). At the time of its enactment, our trial rules required common law pleading  the necessity of alleging a "cause of action." The discovery law had little to do with pleading and practice. However, with the passage and implementation of the Civil Practice Act (Ga. L. 1966, p. 609), it was moved from the Evidence title (Title 38) of our Code to the Practice and Procedure title (Title 81A). The Civil Practice Act spelled the demise of common law pleading and marked the advent of notice pleading, with material issues no longer being alleged in the pleadings. Thus, discovery became an integral and necessary element of our civil practice. Wide latitude is given to make complete discovery possible. The broad purpose of the discovery rules, under the Civil Practice Act, is to enable the parties to prepare for trial so that each party will *286 know the issues and be fully prepared on the facts. Discovery is specifically designed to fulfill a two-fold purpose: issue formulation and factual revelation. The use of the discovery process has been held to be broadly construed. Hickman v. Taylor, 329 U. S. 495, 500 (67 SC 385, 91 LE 451); Reynolds v. Reynolds, 217 Ga. 234, 246 (123 SE2d 115).
Our discovery law provides that "the deponent may be examined regarding any matter, not privileged," and that "it is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence." Code Ann. § 81A-126 (b). "Objections to the competency of a witness or to the competency, relevancy or materiality of testimony are not waived by failure to make them." Code Ann. § 81A-132 (c) (1) and (2). Thus, any question may be asked any deponent calling for an answer, regardless of its being hearsay, immaterial, incompetent or irrelevant, so long as it is reasonably calculated to lead to the discovery of admissible evidence. The statute provides the widest possible latitude for the reason that matters contained in a discovery deposition are not evidence until admitted as such at the trial of the case. The requirements governing the admissibility of evidence are constant. Use of testimony contained in a discovery deposition, is permitted only if it is admissible under the rules of evidence.
A deponent's testimony obtained through discovery, does not belong to or bind either party until such testimony is introduced in evidence at the trial of the case, whereupon the party introducing it adopts the testimony and is bound by it.
If the deponent's testimony on discovery does not bind or belong to any party when taken for discovery, it necessarily follows that there is neither direct nor cross examination as such. Code Ann. § 81A-126 (f), which provides that "A party shall not be deemed to make a person his own witness for any purpose by taking his deposition," *287 supports the position that, since the doctor did not become the defendants' witness by their taking his deposition, the defendants were not prohibited from "cross examining" him. Indeed, the very purpose of this provision, construed in pari materia with Code Ann. § 81A-126 (b), would seem to be to allow the "cross examination," or unrestricted questioning, which serves to lead to discovery of admissible evidence. The fact that the defendants sought to utilize the taking of the doctor's deposition for the limited purpose of discovery, not to be used later as evidence, is all the more reason to permit this wider latitude of questioning, since the deposition was not to be subjected to the narrow rules governing admissibility of evidence.
The provision of Code Ann. § 81A-126 (c), "Examination and cross examination of deponents may proceed as permitted at the trial under the rules of evidence," refers to the order in which the deponent is interrogated, not the method of interrogation.
In the case at bar, the plaintiff's counsel could have rendered all leading questions asked by the defendants' counsel inadmissible in evidence by objecting to the form of the question. The same result would be reached by the defendants' counsel making a similar objection to leading questions propounded by the plaintiff's counsel. What constituted the direct examination of a witness whose testimony was initially taken for discovery, could not be determined until the trial, when one of the parties elected to use the testimony on his behalf. At that time, the rules governing direct and cross examination would apply.
The trial court does have a wide discretion in the entering of orders to prevent oppressive, unreasonable and unduly burdensome or harrassing discovery by interrogatories. Herring v. R. L. Mathis &c. Dairy Co., 121 Ga. App. 373 (2) (173 SE2d 716); Jackson v. Gordon, 122 Ga. App. 657 (178 SE2d 310); Hopkins v. Allen, 123 Ga. App. 330 (180 SE2d 919); Johnson v. O'Donnell, 123 Ga. App. 375 (181 *288 SE2d 291). This court has also held that the trial court may exercise a discretion in requiring a witness to answer as to wholly irrelevant and immaterial matter, or as to matter concerning which full information is already at hand. Cochran v. Neely, 123 Ga. App. 500 (181 SE2d 511). The witness is entitled to be protected against harsh and insulting questioning. Code § 38-1704. He cannot be required to answer questions when the answer may tend to incriminate him. Mallin v. Mallin, 227 Ga. 833 (183 SE2d 377). Discovery should not be used oppressively. American Oil Co. v. Manpower, Inc., 124 Ga. App. 79 (183 SE2d 95). Code Ann. § 81A-130 (b) gives the trial court the authority to "make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression." Nothing herein should be construed in any way limiting the court's authority to make an order for an equitable apportionment among the parties of the expenses incurred in the taking of depositions, such as the reporter's charges, the fees of expert witnesses and the like, and to provide that the right to examine a deponent shall be dependent upon the making of satisfactory arrangements for the payment of his share by the party desiring such examination. Within these guidelines, but in keeping with the overall purpose of the discovery procedure, protective orders may be entered. They should not be entered when the effect is to frustrate and prevent legitimate discovery. The situation present in the case at bar does not fall within these guidelines. The record is absolutely silent as to any unusual circumstances surrounding the taking of this deposition. Counsel could not have been held to have annoyed, embarrassed, or oppressed the witness, as he had not even asked the witness his first question. It is contemplated that the trial judge will exercise a sound and legal discretion in the grant or denial of protective orders. Such are intended to be protective  not prohibitive  and, until such time as the court is satisfied by substantial evidence that bad faith or harrassment motivates *289 the mover's action, the court should not intervene to limit the scope of pretrial discovery. Stonybrook Tenants Assn. v. Alpert (DC-Conn), 29 FRD 165.
Judgment reversed. Hall, P. J., Eberhardt, P. J., Pannell and Clark, JJ., concur. Bell, C. J., Deen, Quillian and Evans, JJ., dissent.
EVANS, Judge, dissenting.
Defendants gave plaintiff notice of the taking of depositions of a disinterested witness, Dr. Paul J. Payne. At the hearing plaintiff insisted that the witness could not be asked leading questions (cross examined) and that the taking of his depositions made the physician the witness of defendants. Defendants promptly sought a protective order under Code Ann. § 81A-130 (b), and insisted that their taking depositions did not make the physician defendants' witness, and further, that plaintiff would have no right to propound any question to the witness unless he gave a separate notice, paid the expense, and examined the witness at another time.
The trial judge issued a protective order granting defendants the right to take the depositions of Dr. Paul Payne for discovery, and specifically providing that in the exercise of his discretion, he refused to allow defendants to cross examine or ask leading questions of the witness. The order did not specifically state whether plaintiff could participate in the hearing by asking questions of the witness, but in failing to grant a prohibitory order as requested by defendants, perhaps implied that plaintiff could propound questions at the hearing. It is necessary, therefore, to decide these questions: 1. When depositions of a disinterested witness are taken, does he become the witness of the party taking said depositions? 2. As to such disinterested witness, may *290 the party who gives notice, and proposes taking the deposition, ask leading questions and cross examine the witness? 3. Does the trial judge have authority under a protective order to take away the right of cross examination and leading questions, assuming the existence of such right of cross examination? 4. May the opposite party participate in the depositions by propounding questions to the witness, or must he give a new notice and pay the expense thereof?
(1) The first question is clearly answered in the negative. A party shall not be deemed to make a person his own witness by taking his deposition. The introduction in evidence of the deposition makes the deponent the witness of the party introducing the deposition. See Code Ann. § 81A-126 (f).
(2) We also answer the second question in the negative and thereby violently disagree with the majority opinion. A party who gives notice of taking depositions of a disinterested witness has no right to cross examine or ask leading questions of that witness.
The discovery statute answers the question in this language: Code Ann. § 81A-126 (a): "Witnesses may be compelled to appear and depose in the same manner that witnesses may be compelled to appear and testify in court." Of course, when testifying in court the person who calls the witness to the stand may not cross examine or ask leading questions unless the trial judge in his discretion permits it; ordinarily it will not be permitted. Code § 38-1706.
The majority opinion, without any supporting argument or authority, seeks to avoid the binding effect of Code Ann. § 81A-126 (a) with the statement that same "refers to the order in which the deponent is interrogated, not to the method of interrogation." Ipse dixit! What is there in the language of this statute that enables the majority to dogmatically state with such finality that the above statute refers to the order and not the method of interrogation? Absolutely nothing!
But if the majority opinion could get rid of Code Ann. § 81A-126 (a) as it seeks to do here  and we are absolutely *291 certain that they are wrong  then, we ask, what are they going to do about Code Ann. § 81A-126 (c)? That statute provides: "Examination and cross examination of deponents may proceed as permitted at the trial under the rules of evidence." (Emphasis supplied.) Does this statute also refer to the order and not the method of interrogation? No indeed! This statute spells it out, leaving it beyond all peradventure of doubt; it is not referring to the order of examination, but to the method, and directs that same be conducted "as permitted at the trial under the rules of evidence."
If the majority opinion could successfully sweep under the rug Code Ann. § 81A-126 (a) it would still be a long way from home-base, and cannot arrive safely unless it can explain away Code Ann. § 81A-126 (c).
The existing rules of evidence, and the method of interrogating witnesses, were taken into consideration by the lawmakers when they enacted the new discovery statutes, and in Reynolds v. Reynolds, 217 Ga. 234, 250 (123 SE2d 115), the Supreme Court of Georgia holds: "It is presumed that the General Assembly in the adoption of the discovery procedure of the Federal rules had knowledge of the general law of this State pertaining to the examination of witnesses. These general rules were not, either directly or impliedly, repealed by the adoption of the Federal discovery rules." The court then proceeded to hold that Code § 38-1705 as to cross examination applied to discovery proceedings. Thus, our new discovery statutes must be construed in pari materia with the existing rules of evidence.
The majority argues that Code Ann. § 81A-126 (b) lends weight to its contention that leading questions may be propounded to a disinterested witness. This is a complete non sequitur! The above cited statute deals with the wide variety of matters that may be inquired of, and not with the method of inquiry.
The majority argues that as the physician did not become defendants' witness under Code Ann. § 81A-126 (f), therefore, they were not prohibited from cross examining him. *292 This is strange logic. They must first show the witness is called against defendants before they can cross examine. The statute plainly states: "The right of cross examination thorough and sifting shall belong to every party as to the witnesses called against him." (Emphasis supplied.) Code § 38-1705. The defendants cannot simply say, "he is not my witness" and then cross examine. They must go a step further and show that the witness is "called against him." This they did not and could not do.
(3) Irrespective of whether the right of cross examination existed in this case, as to this disinterested witness, what discretion inheres in the trial judge in issuing a protective order? As was held in the Reynolds case, supra, the general rules of law as to examination of witnesses are to be considered as a part of the discovery statutes. It has always been within the discretion of the trial judge to permit cross examination or withhold the right of cross examination. See Code § 38-1706; Brown v. State, 203 Ga. 218, 221 (46 SE2d 160); Peretzman v. Simon, 185 Ga. 681, 683 (196 SE 471); Mulligan v. State, 18 Ga. App. 464 (11) (89 SE 541).
The trial judge, under the provisions of Code Ann. § 81A-130 (b) has the power to make a protective order as to the proposed depositions in which he is given vast and wide powers. Isn't it bordering on the completely ludicrous to say that the judge, in his protective order, may: 1. Prevent the taking of the depositions at all, or 2. Require that they be taken only upon written interrogatories, or 3. Prevent the inquiry into various and sundry subjects, or 4. Order the depositions taken only at a particular place to be designated by the judge, or 5. Exclude all persons from the deposition hearing except the parties, their counsel, and the witness, and yet the trial court with all of this power cannot prohibit leading questions? We repeat, isn't it ludicrous?
After granting the foregoing almost unlimited power, as a catch-all, the above statute ends with this additional investiture of power, to wit: ". . . or the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment or oppression." *293 (Emphasis supplied.) If there were any doubt before of the court's right to prohibit leading questions, this strong language should completely remove that doubt. Is there any suggestion here, or any reason to believe, the trial judge is more limited in his discretion under a protective order than in the trial of cases under the general rules of evidence as to examination of witnesses, and specifically as is set forth in Code § 38-1706?
Suppose when this case is returned to the trial court, the judge elects to substitute a new order (which he has the discretion to do) to the effect that the depositions not be taken. Code Ann. § 81A-130 (b) grants this authority. Would the defendants be better off? Or suppose he orders depositions to be taken on interrogatories only? Would this benefit the defendants? The third question must necessarily be answered in the affirmative.
(4) Finally, may the opposite party participate in the deposition hearing, by asking questions of the witness, or must he give a new notice and pay the expense thereof?
Code Ann. § 81A-126 (a) and (b) clearly answers this question stating that it will be done "in the same manner that witnesses may be compelled to appear and testify in court" and "examination and cross examination of deponents may proceed as permitted at the trial under the rules of evidence." To require a new notice would create needless expense, consume additional time, would reverse the practice of examination and cross examination of witnesses, and would lend itself to annoyance and harassment of witnesses. Of course, in trials in the courts of this State, when a witness is called to testify, the opposing party has the right to cross examine the witness then and there. Code § 38-1704; First Nat. Bank of Birmingham v. Carmichael, 198 Ga. 309, 314 (31 SE2d 811). The same rule applies in depositions and it would be a travesty on justice to require the opposing party to remain silent, ask no questions, and then have to give a new notice and pay the expense of cross examining the witness who has been called for direct examination.
*294 The same rule applies here which governs the taking of depositions by written interrogatories under Code Ann. § 81A-131 (a) which provides that within 10 days from service of the interrogatories, the opposing party may serve cross interrogatories to be answered in this same hearing, with no new notice.
I, therefore, respectfully dissent from the majority opinion in this case.
I, am authorized to state that Chief Judge Bell and Judges Deen and Quillian join me in this dissent.