## 75936. OSTROFF v. COYNER.
(369 SE2d 298)

BIRDSONG, Chief Judge.

Defendant-appellant Barton B. Ostroff appeals from a verdict and judgment for actual and punitive damages awarded to plaintiff-appellee Doug Coyner in an action for malicious abuse of process, and from orders for sanctions for failure to comply with post-judgment discovery procedures. The litigation upon which the instant action was based was commenced on March 30, 1981, when suit was filed in the State Court of Cobb County by Gold Coast Marketing, Inc., a corporation of which Ostroff was the sole shareholder, against Doug Coyner d/b/a Rock Shrimp International (RSI), alleging that the defendant owed the plaintiff $4,880.80 plus interest and costs on open account as shown by attached documents. Coyner answered, contending that the complaint failed to state a claim upon which relief could be granted because the indebtedness sued upon, if incurred, was owed by RSI, a Florida corporation which was at all times during the date of the alleged transactions validly organized and existing in good standing; that the plaintiff openly and knowingly at all times did business with the corporation and not with Coyner individually; that Coyner was thus not a proper party to the action; that RSI had as its place of business in the state of Georgia an address located in DeKalb County and had not conducted any business since the time of the

transactions alleged in the complaint; and that therefore the court did not have jurisdiction of the corporation or the subject matter of the complaint, the captioned defendant was not a proper party to the action, and the suit should be dismissed.

Gold Coast pursued no discovery. Although Ostroff was given notice on August 24, 1983, that his deposition would be taken on September 2, he failed to appear or give notice that he would not be appearing, and a motion to compel was filed by Coyner/RSI. The case was set for trial on September 12, 1983. On the Friday before the Monday trial date, the attorney then representing Gold Coast made an unsolicited telephone call to Coyner's lawyer offering to accept $2,000 from Coyner to settle the case. When this was refused, Gold Coast's attorney telephoned Coyner's lawyer again on the Sunday before trial, offering to accept $500 from Coyner in return for dismissing the suit. This offer was also refused as Coyner was prepared for trial and had incurred substantial costs. Ostroff failed to appear in court for trial and his attorney did not move for a continuance or offer any explanation for his client's non-appearance, but dismissed the case, which was never refiled.

Based upon these facts, on June 20, 1984, Coyner filed a complaint against Ostroff and Gold Coast, alleging that the action against him had been carried on maliciously and without probable cause, for which he had incurred enumerated costs in defense thereof and was entitled to actual and punitive damages. Coyner's suit was grounded upon the theories of both malicious use and malicious abuse of process. Gold Coast/Ostroff sought to have the action dismissed by a motion for judgment on the pleadings and motions for directed verdict argued on at least three occasions during the trial. At the conclusion of the plaintiff's case, the trial court directed a verdict in Ostroff's favor on the malicious use of process issue, but allowed the case to go before the jury on the basis of malicious abuse of process. The court found that evidence of abuse of process existed beyond the mere maintenance of the action in Ostroff's failure to attend depositions or to "legitimately pursue the action once it was filed to a reasonable bona fide determination . . . and the attempt to extract a last minute settlement of the case." The jury awarded a verdict of the total amount of damages sought by Coyner, plus an additional $10,000 in punitive damages.

Ostroff moved for judgment notwithstanding the verdict or for a new trial, which was denied. After Ostroff filed this notice of appeal, Coyner filed a motion to require him to post a supersedeas bond, which was granted. When no supersedeas bond was posted, Coyner sought enforcement through the post-judgment discovery procedures of OCGA § 9-11-69. The court's orders for Ostroff to appear for the taking of a deposition and to produce documents were resisted by re-

peated motions for protective orders and for reconsideration which, after two hearings on the matter, culminated in an order entered September 17, 1987, finding Ostroff in wilful contempt of court for failure to abide by the discovery process as ordered. The order further provided that Ostroff could purge himself of contempt and avoid incarceration if he appeared for deposition and produced all documents requested within 20 days. Coyner was awarded attorney fees and costs in either event; the court also ordered at the final hearing that Ostroff be arrested and jailed until he complied, if jurisdiction of him could be obtained. Although Coyner offered to go to North Carolina, where Ostroff was residing, to take his deposition, to date Ostroff has failed to obey any of these orders. He lists eight enumerations of error on appeal. *Held*:

1. On the day scheduled for trial, Ostroff sought to modify the pretrial order so as to allow his new counsel to file a motion to dismiss for failure to state a claim and a motion in limine, and to have these motions considered prior to trial. After hearing arguments, the trial court denied Ostroff's motion to modify the pretrial order, but advised his attorney that Ostroff's rights could be reasserted in a subsequent motion for directed verdict. Ostroff argues on appeal that because the complaint failed to state a claim either as to malicious use of process or malicious abuse of process, his motion to dismiss should have been granted. Since a verdict was directed in his favor on the claim of malicious use of process, we will consider only Coyner's alleged failure to state a claim for malicious abuse of process.

" 'The principal distinction between "malicious abuse of process" and "malicious use of process" is that malicious abuse lies for "wrongfully and unlawfully using legally and properly issued process for a purpose the law never intended it to effect, while the latter action lies for maliciously suing out civil process without probable cause.' " " ' "Two elements are necessary to an action for the malicious abuse of legal process: first, the existence of an ulterior purpose; and, second, an act in the use of the process not proper in the regular prosecution of the proceeding. Regular and legitimate use of process, though with a bad intention, is not malicious abuse of process." ' " *Ferguson v. Atlantic Land &c. Corp.*, 248 Ga. 69, 71 (2) (281 SE2d 545).

Coyner's claim of abuse of process was alternately and cumulatively premised upon the assertion, supported by uncontroverted evidence, that Ostroff caused his wholly owned corporation to file suit against Coyner individually, rather than derivatively or as an alter ego, when Ostroff knew that the indebtedness sued upon was actually owed by RSI, a corporation in which Coyner had been one of two shareholders. Coyner denied any liability for the corporate debt and proved that Ostroff was fully aware of the truth of this assertion in

the trial of the instant case. However, Ostroff caused his suit to remain pending against Coyner without any further action for two and a half years until he attempted to extract a settlement from Coyner. When even a nuisance settlement of $500 was rejected, Ostroff dismissed the case immediately and never refiled.

Ostroff relies primarily upon *Medoc Corp. v. Keel*, 152 Ga. App. 684 (1) (263 SE2d 543), which held that "the *mere issuance* of the summons and complaint, by which Medoc was legally and properly made a party defendant to the action . . . has no bearing or relevancy to, and cannot serve as a predicate for, a counterclaim for *abuse* of civil process." Id. at 686. That case goes on to explain, however, that the plaintiff's continued pursuit of the action cannot "be turned into a damage suit by the defendant against the plaintiff for bringing it, while it is still pending. . . . [T]he mere filing and maintaining of the main action by the plaintiff does not state a claim for damages which can be recovered in the trial of the same action. [Cits.]" Id. at 687-688.

The misapplication of the *Medoc* ruling to the situation here is readily apparent. First, Ostroff not only misused the process by knowingly causing the suit to be filed against an improper party, he further perverted its issuance by failing to pursue discovery or otherwise litigate the case, by attempting to solicit a settlement at the eleventh hour before trial, and then by dismissing the suit after failing to appear in court. Second, Coyner brought the instant action as a separate suit, not as a counterclaim to recover damages in the trial of the same action. In such circumstances, we find the reasoning of the Supreme Court of Nevada in a decision based upon similar procedural facts to be much more persuasive. The plaintiff in *Bull v. McCuskey*, 615 P2d 957 (Nev. 1980) asserted that the process (complaint and summons) in a prior suit charging him with medical malpractice was misused for the ulterior purpose of coercing a nuisance settlement. The court stated: "[T]he two essential elements of abuse of process are an ulterior purpose, and a wilful act in the use of the process not proper in the regular conduct of the proceeding. . . . In considering all evidence presented, it was permissible for the jury to conclude that [the defendant] had utilized an alleged claim of malpractice for the ulterior purpose of coercing a nuisance settlement. His offer to settle the case for the minimal sum of $750 when considered in the light of his failure adequately to investigate before deciding to file suit and the total absence of essential . . . evidence, supports such a conclusion by the jury, and we may not set it aside." Id. at 960.

We think that Ostroff's failure to regularly and legitimately pursue the litigation in the suit against Coyner likewise authorized the jury verdict in the instant case on the theory of malicious abuse of process. It follows that the trial court correctly denied appellant's mo-

tions to dismiss, for directed verdict, and for judgment notwithstanding the verdict based on the same grounds.

2. Ostroff argues that the trial court erred in refusing to modify the pretrial order so as to allow his motion in limine to be heard prior to trial. In this motion he sought to preclude evidence or argument in regard to witnesses available to both parties who were not called in his defense, and any evidence of expenses incurred by Coyner in defending the lawsuit on the debt. The consolidated pretrial order prepared and agreed upon by the parties had been entered on October 23, 1985. The trial was noticed for January 10, 1986, at which time Ostroff's present counsel appeared and asked for a continuance; however, no motion to open the pretrial order or for modification was made until January 31, 1986, the date then set for trial. Ostroff's attorney was permitted to make all the objections and argue all the theories during the course of the trial that he sought to have injected in the pretrial order and, indeed, prevailed on his motion for judgment on the pleadings in regard to the count of malicious use of process. See *Georgia Power Co. v. Bishop*, 162 Ga. App. 122 (3) (290 SE2d 328).

Under OCGA § 9-11-15 (a), "once a pretrial order has been entered, a party may not amend without leave of court or consent of the opposite party . . . [and] 'such order when entered controls the subsequent course of the action, unless modified at trial to prevent manifest injustice.' " *Gaul v. Kennedy*, 246 Ga. 290, 291 (1) (271 SE2d 196); OCGA § 9-11-16 (b). "Generally, a proposed amendment will not be barred . . . because it is offered late in the case so long as the other party is not prejudiced. 'The burden is on the party seeking amendment to show lack of laches or lack of unexcusable delay.' [Cit.] The record reveals no attempt by [appellant] to satisfy this burden in the case sub judice. The motion to amend was filed on [January 31, 1986] which was more than [three] months after the date of the pretrial order. As the record contains no showing of a lack of laches or inexcusable delay, we find no abuse of the trial court's discretion in its denial of [appellant's] motion to amend." *Mulkey v. Gen. Motors Corp.*, 164 Ga. App. 752, 754-755 (3) (299 SE2d 48); rev'd on other grounds, 251 Ga. 32 (302 SE2d 550). Accord *Hickox v. DuBose*, 172 Ga. App. 47 (321 SE2d 789).

3. Ostroff contends the trial court erred "in not considering [his] motion for judgment notwithstanding the verdict or for new trial in light of" *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414). We are uncertain of the specific basis for appellant's claim of error as he argues: (a) such claim "must be pleaded as a compulsory counterclaim" and (b) that applying the "*Yost* standard of 'lacks substantial justification' " the evidence is insufficient to support the verdict and judgment.

Appellant argues we must apply the law as it exists at the time of

our judgment, rather than applying the law prevailing at the time of the trial court's judgment. We agree — in part. See *Guernsey Petroleum Corp. v. Data Gen. Corp.*, 183 Ga. App. 790 (4) (359 SE2d 920).

(a) We cannot agree that retroactive application of *Yost* is required as to appellant's compulsory counterclaim argument. *Yost* was decided June 25, 1986. The action by Gold Coast was dismissed on September 12, 1983. Because *Yost* requires that a claim for abusive litigation be brought as a compulsory counterclaim in the original suit by the plaintiff, and that action was dismissed in 1983 before *Yost* was conceived, such procedure could not have been utilized and the procedure extant was proper. At that time, an action for malicious abuse of process could be filed as a counterclaim — subject only to the presentation of sufficient evidence to sustain his burden of proof. *Medoc*, supra at 685. However, an allegation "that a plaintiff wrongfully brought and continued a suit will not, without more, state a claim for malicious abuse of process." *Woolbright v. Hensley*, 174 Ga. App. 615 (2) (330 SE2d 812); accord *Medoc*, supra at 685. Here, Ostroff caused his action to remain pending against Coyner without further action for two and one-half years, did not pursue discovery to determine the proper parties defendant or who was responsible for the purported debt, and failed to appear for depositions or motion to comply with a motion to compel discovery. The cause of action pursued here for malicious abuse of process did not exist at the *commencement of Ostroff's action*, but arose from subsequent acts of Ostroff. A compulsory counterclaim is one "which at the time of serving the pleading the pleader has against any opposing party. . . ." OCGA § 9-11-13 (a). Accordingly, Coyner's action for malicious abuse of process not being in existence at the time Coyner served his pleadings in response to Ostroff's complaint, it was not a compulsory counterclaim in that action and could properly be filed as a separate action. See *Jenkins v. Martin*, 142 Ga. App. 573, 574 (236 SE2d 542); *Kitchens v. Lowe*, 139 Ga. App. 526, 527-528 (228 SE2d 923). Further, we note that the present argument that the trial court erred in not applying *Yost* principles to his motions, was not presented to the trial court in any portion of the transcript or record. Thus, the question of failure to bring a compulsory counterclaim was not raised below and cannot be raised as an issue on appeal. *Booker v. Eddins*, 183 Ga. App. 449, 453 (359 SE2d 211).

(b) We will "apply the precepts of *Yost*" as to whether the evidence is sufficient to support a claim of abusive litigation. *Guernsey Petroleum*, supra at (4). *Yost* held, in pertinent part, that "any party who shall bring . . . an action, or any part thereof, that lacks substantial justification, or is interposed for . . . harassment; or any party who unnecessarily expands the proceeding by improper conduct, including, but not limited to, abuses of discovery procedures, shall be

liable in tort to an opposing party who suffers damage thereby.

"The term 'lacks substantial justification' shall mean . . . substantially groundless, or substantially vexatious." *Yost*, supra at '96. The facts recited above, when construed in favor of upholding the jury's verdict (*Felton v. Mercer*, 149 Ga. App. 358 (1) (254 SE2d 398)) as we are required to do (*Scott v. Scott*, 243 Ga. 472, 473 (254 SE2d 852)), are sufficient to support the jury verdict and judgment of the court. A motion for judgment n.o.v. is authorized only when the evidence and all reasonable deductions therefrom demand a verdict in favor of the movant. *Mercer v. Woodard*, 166 Ga. App. 119, 127 (13) (303 SE2d 475). A verdict was not demanded for Ostroff. Hence, it was not error to deny his motion for judgment n.o.v., or in the alternative, new trial.

4. Upon cross-examination, Ostroff was asked if he instructed the attorney representing him in the action against Coyner to assert the attorney-client privilege when questioned by deposition for the present case as to how it was decided to sue Coyner rather than RSI. Ostroff first denied giving such instructions, but later responded that he could not recall any conversation in that regard. Over vigorous objection by appellant, the trial court allowed Coyner to have read to the jury that portion of the former attorney's deposition in which he declined to answer whether he had correspondence from Ostroff identifying Coyner as the defendant in the suit on the debt by stating: "I specifically spoke to my client [Ostroff] before coming here, and my client has elected to exercise his privilege and asked me to assert it."

Ostroff objected at trial, and now contends, that this was a prima facie contravention of the attorney-client privilege provided by OCGA §§ 24-9-24 and 24-9-25, even if the intent was to impeach his motive in pursuing the case against Coyner. The trial court ruled that the pertinent deposition testimony was admissible because the witness was unavailable to be present at trial; and that it was not violative of the attorney-client privilege because the identity of the defendant subsequently became a matter of public record for which no privilege could be asserted or sought. We agree.

"In determining whether the statements are to have protection under [OCGA §§ 24-9-24 or 24-9-25] we should approach the matter by confining the attorney-client privilege to 'its narrowest permissible limits under the statute of its creation,' [cit.]. . ." *Atlantic Coast Line R. Co. v. Daugherty*, 111 Ga. App. 144, 150 (1) (141 SE2d 112). The mere fact that a statement is made to an attorney for use in preparing for litigation does not render it a communication to the attorney within the privileged category. " 'It is axiomatic that one cannot render privileged that which is otherwise not privileged merely by placing it in the hands of his attorney.' [Cit.]" Ibid. Such statements fail to meet the initial requirement of the test adopted in *Marriott*

*Corp. v. American Academy of Psychotherapists,* 157 Ga. App. 497, 505 (3) (d)) (277 SE2d 785), "as they were not 'made for the purpose of securing legal advice,' but were merely transferred to counsel when litigation ensued."

Moreover, "it is [not] impermissible to draw an unfavorable inference in a civil case from the privileged refusal to testify in that case. . . . [A]lthough a person does have a *right* to invoke the privilege in a civil case in order to protect himself, when he does so, an inference against his interest may be drawn by the factfinder. 'Since the inference is irresistible and logical in such circumstances, the court may as a matter of law draw the inference. Such an inference is based upon an implied admission that a truthful answer would tend to prove that the witness had committed the . . . act. . . . The administration of justice and the search for truth demands that an inference may be drawn that [the] witness' testimony would be unfavorable to him in a civil action in which the privilege is invoked to protect himself. . . .' [Cit.]" *Simpson v. Simpson,* 233 Ga. 17, 20-21 (209 SE2d 611). Thus the trial court properly allowed this evidence to show that Ostroff was unwilling to allow his attorney to divulge the reasons why Coyner was sued in his individual capacity, and to draw any reasonable inferences from the taking of the privilege.

5. Appellant contends that the trial court allowed Coyner to improperly testify as to the offers of settlement made by his attorney immediately prior to trial in violation of OCGA § 24-3-37. The court overruled Ostroff's objection to this testimony because it was not sought "to prove an admission of liability or anything of that nature," and instructed the jury that they "would be unauthorized to consider it for such a purpose." The thrust of Coyner's suit was that while RSI owed a debt on account in a liquidated amount, he personally owed nothing; and thus Ostroff's offers to accept payment from him personally of lesser amounts showed the ulterior purpose of extracting a nuisance settlement upon a debt owed by the corporation as a part of his continuing bad faith litigation.

We find no grounds for reversal in the admission of this evidence. First, the settlement offers were not made during the course of the litigation in which they were offered in evidence, but in the context of settling another suit. Second, the underlying purpose in proposing to accept such lesser amounts was an offer to settle and not a proposition to compromise. It is controlled by the principles laid down in *Teasley v. Bradley,* 110 Ga. 497 (6) (35 SE 782), as follows: " 'An admission of liability contained in an offer to settle brought about by a simple demand for settlement, is not inadmissible on the ground that such admission was "made with a view to a compromise," when there is nothing whatever to indicate that there has been any effort to compromise, and when it can not be inferred from the circumstances

under which the offer was made that there has been such an effort. . . .' " "The testimony does not indicate any effort of the parties to reach a settlement. [Cit.]" *Campbell v. Mut. Svc. Corp.*, 152 Ga. App. 493, 494 (2) (263 SE2d 202), quoting *Williams v. Smith*, 71 Ga. App. 632, 642 (31 SE2d 873) " 'And even if a general proposition of settlement has been made by one party, the admissions of the opposite party may be admissible if no specific terms of compromise have been suggested; and the admissions of a party who may desire a settlement are not to be excluded where, so far as appears from the evidence, the opposite party did nothing to induce the statement and did not contemplate a compromise or abatement of his demand.' [Cit.]" *Pacific Nat. Fire Ins. Co. v. Beavers*, 87 Ga. App. 294, 297 (1) (73 SE2d 765). See also *Holbrook Contracting v. Tyner*, 181 Ga. App. 838 (1) (354 SE2d 22). The evidence admitted here in no way involved a compromise of Coyner's claim.

6. Appellant's enumerations of error concerning the trial court's post judgment discovery orders and sanctions are without merit. The purpose of OCGA § 9-11-69 is to allow post judgment discovery to aid a litigant to recover on a liability which has been established by a judgment, in the manner provided for such discovery measures prior to judgment. *Miller v. U. S. Shelter Corp.*, 179 Ga. App. 469 (4) (347 SE2d 251). Thus the trial court has the power to control the details of time, place and scope of discovery. *Bicknell v. CBT Factors Corp.*, 171 Ga. App. 897, 899 (321 SE2d 383). The court also is authorized to impose sanctions for failure to comply with its discovery orders, although there is apparently no provision for the aggrieved party to move for a dismissal of an appeal on the basis of the non-complying party's adjudication of contempt. Compare *Williams v. Natalie Townhouses*, 182 Ga. App. 815 (357 SE2d 156) with *Bryant v. Nationwide Ins. Co.*, 183 Ga. App. 577 (359 SE2d 441).

Ostroff's arguments that because he does not reside in Georgia nor possess any property here, the court should not have required him to appear here, are not cited to the record to establish these alleged facts. Furthermore, Coyner offered to go to North Carolina at his own expense to depose Ostroff, and the court gave Ostroff the opportunity to purge himself of contempt by appearing in Cobb County for the ordered deposition within 20 days of the entry of the order imposing sanctions. To date the appellant has not appeared for the taking of his deposition and has remained in wilful contempt of the court order requiring him to do so, while at the same time availing himself of the right to appeal the entire case.

" 'The trial court's discretion in dealing with discovery matters is very broad, and this court has stated on numerous occasions that it will not interfere with the exercise of that discretion absent a clear abuse. [Cits.]' [Cit.] Moreover, the trial court's discretion in discovery

matters is particularly broad when it is dealing with a party's failure to obey a discovery order that it has previously entered in the case. Pursuant to OCGA § 9-11-37 (b) (2), a wide range of options is available to the trial court in such a situation and, in addition, that code section specifies that 'the court shall require the party failing to obey the order or the attorney advising him, or both, to pay the reasonable expenses, including attorney fees, *caused by the failure*, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. (Emphasis supplied.)' . . . In the present case, there can be no doubt that appellant was, at the very least, in violation . . . of the trial court's [order of September 17, 1987, compelling his appearance for post judgment deposition and production of documents]. The record also provides ample support for the trial court's determination that appellant's conduct was characterized by [his] deliberate intent to evade [his] discovery obligations and thereby to frustrate appellee's right to prosecute his case. The trial court did not err in finding appellant's conduct to evince a wilful failure to obey the discovery order[s]." *Tandy Corp. v. McCrimmon*, 183 Ga. App. 744, 745-746 (1) (360 SE2d 70). We find no ground for reversal for any reason asserted.

7. We have carefully examined the remaining enumerations of error and find them to be without substantial merit.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED APRIL 27, 1988 —
REHEARING DENIED MAY 12, 1988.

*Morris L. Richman*, for appellant.
*H. Bruce Jackson, Lawrence E. Newlin*, for appellee.

