## A00A0471. INTERNATIONAL HARVESTER COMPANY v. CUNNINGHAM.
### (538 SE2d 82)

BLACKBURN, Presiding Judge.

International Harvester Company[1] ("International") appeals from a jury verdict in favor of George Cunningham on his claim for injuries he received when a crank handle broke off a disc harrow and hit him in the face. On appeal, International contends that the trial court: (1) abused its discretion when it refused to compel Cunningham to produce the crank handle for an expert inspection; (2) erred when it admitted surgical photographs into evidence; and (3) erred when it denied International's motion for a mistrial based on Cunningham's closing arguments. Additionally, International contends the jury's award was excessive. Because we find the trial court's denial of International's requests for the production of the crank handle, the very part Cunningham alleged was defective, was a clear abuse of discretion, we reverse.

1. In its first enumeration of error, International contends the trial court abused its discretion when it refused to compel Cunningham to produce the crank handle for inspection by an expert metallurgist retained by International, and we agree. The record shows that Cunningham's expert had unlimited access to the crank handle. Yet, International had been given only one opportunity to test the crank handle early in the litigation, prior to the testing by Cunningham's expert and prior to that expert's availability for deposition. By preventing the parties from having equal access to the pivotal piece of evidence, the trial court's denial of International's request thwarted the very purpose of discovery.

Prior to suit, counsel for Cunningham had the broken crank handle examined by Robert Hochman,[2] a metallurgical expert. Suit was filed in March 1994. In July 1995, before Hochman was available for deposition, Cunningham's counsel agreed to allow International's in-house engineer access to the crank handle for four or five weeks. This was the only time International had access to the crank handle before trial four years later.

Two years later, in late September 1997, Hochman was made available for deposition. Hochman testified that after his initial analysis in 1993, he had conducted a number of tests in 1995, some of which required a section of the crank handle to be removed. Shortly after Hochman's deposition, International requested production of

---

[1] Cunningham sued International and Case Corporation. The trial court directed a verdict in favor of Case Corporation, which is not a party to this appeal.

[2] Although International had requested in the spring of 1994 the identity of any experts expected to testify at trial, Hochman was not identified until sometime later.

the crank handle so that its expert metallurgist could conduct tests on the crank handle as well. This request, made well within the discovery period,[3] was met by objection. Despite the fact that his own expert had repeatedly tested the crank handle, Cunningham contended that a second production of the crank handle was unreasonable and an abuse of discovery. Although discovery was ongoing (depositions continued into May 1998), International's subsequent motion to compel was denied by the trial court.[4] The trial court denied International any additional access to the crank handle, finding that International should have had a metallurgical expert examine the handle in 1995, more than two years prior to the deposition of Hochman.

The case proceeded to trial on November 16, 1998. During the cross-examination of Hochman, International learned for the first time that he had conducted additional testing on the crank handle in June 1998, after his deposition. Because this testing had not been disclosed to International prior to trial, the trial court ordered a mistrial.

Following the mistrial in November, International was permitted to depose Hochman a second time regarding the bases for his opinion, including the previously undisclosed testing. In that deposition, Hochman testified that he had removed another section of the crank handle for this second series of testing. With regard to these tests, Hochman deposed that the only way that someone else could verify his results would be to conduct the tests again on a fresh piece of the crank handle:

Q: Dr. Hochman, is there any way for another metallurgist or engineer with metallurgical training to verify the results you've shown through these tests by looking at the photographs of the part?

A: Not by looking at the photographs. I mean, this is far more sophisticated than photography.

Q: And the only way someone could independently verify the results you've shown in these tests is to conduct the comparable tests themselves, is that correct?

A: That's correct. And they would have to start with a fresh piece, because we have already cleaned this one, if they want to find that.

Q: Does the part still have areas where a fresh piece could be obtained?

A: It does.

---

[3] Discovery was extended numerous times by agreement of the parties.
[4] International's motion to reconsider was also denied by the trial court.

International again requested production of the crank handle in light of this testimony by Hochman, but the trial court denied the motion. At the second trial in March 1999, counsel for Cunningham cross-examined International's expert and challenged his credibility because the expert had not examined the crank handle prior to trial or conducted independent tests on the handle.

The goal of discovery is the fair resolution of legal disputes, "to remove the potential for secrecy and hiding of material." *Hanna Creative Enterprises v. Alterman Foods.*[5] In this case, International was denied the opportunity to test the evidence in the same manner that plaintiff's expert had tested it and was thus denied the ability to effectively cross-examine or refute plaintiff's expert's testimony. This was done even though plaintiff's expert testified that testing was the only way the defendants could test his conclusions. International's one opportunity to examine the crank handle arose prior to the testing by Cunningham's expert and prior to either of his two depositions. Thus, at the time International looked at the crank handle, it had very little information about Cunningham's theories. Our rules of discovery do not require International to guess what evidence may show; rather, they require that International have fair access to evidence. Cunningham's expert testified that the only way to verify his tests were to conduct new tests, which is exactly what International requested. Ironically, while the trial court found that the imbalance of information due to Hochman's undisclosed testing was sufficient to declare a mistrial, it refused to allow International the discovery necessary to rebut the results of the tests.

The trial court denied International's request solely because International had inspected the handle once before, early in the litigation. This "one bite at the apple" reasoning is contrary to the nature of the discovery process. Discovery is an ongoing process, requiring parties to evaluate and reassess evidence as new evidence is presented. By prohibiting this legitimate discovery, the trial court frustrated the very purpose for discovery in our civil practice.

> [D]iscovery [is] an integral and necessary element of our civil practice. Wide latitude is given to make complete discovery possible. The broad purpose of the discovery rules, under the Civil Practice Act, is to enable the parties to prepare for trial so that each party will know the issues and be fully prepared on the facts. Discovery is specifically designed to fulfill a two-fold purpose: issue formulation and factual revelation. The use of the discovery process has been held to

---

[5] *Hanna Creative Enterprises v. Alterman Foods*, 156 Ga. App. 376, 378 (2) (274 SE2d 761) (1980).

be broadly construed. *Hickman v. Taylor*, 329 U. S. 495, 500 (67 SC 385, 91 LE2d 451) [(1947)]; *Reynolds v. Reynolds*, 217 Ga. 234, 246 (123 SE2d 115) [(1961)].

*Travis Meat &c. Co. v. Ashworth*.[6] That two-fold purpose was denied to International.

Discovery should ensure that a party is not placed at a disadvantage simply because it does not have custody of certain evidence or because it is diligent and examines evidence early in the litigation. While the extent of discovery is generally within the discretion of the trial court judge, *Emmett v. Regions Bank*,[7] this discretion must be based on sound legal analysis with an eye to promoting the purpose of discovery and limiting its abuse. Discovery should not be prohibited where the effect is to frustrate that purpose and prevent legitimate discovery. *Mead Corp. v. Masterack*;[8] see *Intl. Svc. Ins. Co. v. Bowen*.[9] The trial court abused its discretion under the circumstances in this case. Accordingly, this case is reversed.

2. International contends that the trial court erred by allowing the admission of eight photographs depicting the surgery performed on Cunningham to reconstruct his face. International contends that these photographs were both irrelevant and inflammatory. Although we reverse this case for the reasons set forth above, we address this issue to give direction to the trial court for the new trial in this matter.

The admission of photographs into evidence is a matter within the discretion of the trial court. *Thornton v. Thornton*.[10] Moreover

"[t]he law in Georgia is well-settled that photographs which are relevant and material to issues in a case are admissible and not excludable on the ground that they would inflame the minds of the jury. (Cit.)" *Carter v. State*, 244 Ga. 803, 804 (262 SE2d 109) (1979). It is not error to admit photographs that illustrate testimony, depict the extent, nature and location of the victim's wounds, or show the scene of the crime. *McKenzie v. State*, 248 Ga. 294, 298 (14) (282 SE2d 95) (1981); *Sanders v. State*, 257 Ga. 239, 242 (4) (357 SE2d 66) (1987).

*Reeves v. State*.[11]

[6] *Travis Meat &c. Co. v. Ashworth*, 127 Ga. App. 284 (193 SE2d 166) (1972).
[7] *Emmett v. Regions Bank*, 238 Ga. App. 455 (1) (518 SE2d 472) (1999).
[8] *Mead Corp. v. Masterack*, 243 Ga. 213, 215 (253 SE2d 164) (1979).
[9] *Intl. Svc. Ins. Co. v. Bowen*, 130 Ga. App. 140 (202 SE2d 540) (1973).
[10] *Thornton v. Thornton*, 232 Ga. 666 (208 SE2d 557) (1974).
[11] *Reeves v. State*, 233 Ga. App. 802, 806 (4) (505 SE2d 540) (1998).

Therefore, to be admissible in this case, the photographs offered by Cunningham should be directly demonstrative of the nature of his injuries. *Brown v. State*[12] is instructive in determining which photographs were admissible here. In *Brown*, our Supreme Court considered the admissibility of post-autopsy photographs, and the following rule was set forth:

A photograph which depicts the victim after autopsy incisions are made or after the state of the body is changed by authorities or the pathologist will not be admissible unless necessary to show some material fact which becomes apparent only because of the autopsy. A photograph which shows mutilation of a victim resulting from the crime against him may, however gruesome, have relevance to the trial of his alleged assailant. The necessary further mutilation of a body at autopsy has no such relevance and may cause confusion, if not prejudice, in the minds of jurors.

Id. at 867 (5).

Analogizing this rule to the case at hand, those surgery photos which show injuries and fractures beneath Cunningham's skin could be construed by the trial court to be necessary to show the extent of Cunningham's injuries. A review of the transcript reveals that the first three surgery photographs offered by Cunningham were used by his surgeon to demonstrate the nature of his subcutaneous injuries.

The remaining five pictures appear to depict the reconstructive procedures taken to repair Cunningham's jaw. While referring to the reconstruction work shown by these pictures, Cunningham's surgeon did comment on the bone damage which he had to repair, thereby relating the pictures, at least tangentially, to the nature and extent of Cunningham's wounds. As such, we cannot say that the trial court abused its discretion in admitting these photographs.

3. The remaining errors are rendered moot by our decision in Division 1.

*Judgment reversed. Pope, P. J., Smith, P. J., and Mikell, J., concur. Eldridge, Barnes and Phipps, JJ., dissent. Johnson, C. J., disqualified.*

BARNES, Judge, dissenting.

I respectfully dissent because the trial court did not abuse its discretion when it refused to compel the plaintiff to produce the crank handle. "The trial court's discretion in dealing with discovery matters is very broad, and this court has stated on numerous occa-

---

[12] *Brown v. State*, 250 Ga. 862 (302 SE2d 347) (1983).

sions that it will not interfere with the exercise of that discretion absent a clear abuse." (Punctuation omitted.) *Ostroff v. Coyner*, 187 Ga. App. 109, 117 (6) (369 SE2d 298) (1988). An appellate court, "which is far removed from the unfolding development in the life of a case in court and does not participate in its ongoing journey," must respect a trial court's discretion and reverse only when it is "manifestly abused." *Gen. Motors Corp. v. Blake*, 237 Ga. App. 426, 427 (1) (515 SE2d 166) (1999). "To say that as a matter of law that discretion was abused is a matter of no small moment." Id.

In this case, the record shows that the nature of Cunningham's product defect claims were made known to International from the moment suit was filed. In his complaint, Cunningham alleged that "the crank handle of the disc broke in two, flew off the disc harrow and struck the Plaintiff in his face." He further alleged that the crank handle was defective because it "was not properly or adequately welded and the material which was used for the rod handle was not suitable for the purpose for which it was intended." Over one year after Cunningham's complaint was filed, the parties arranged for an unidentified expert of International to independently examine the crank handle and conduct nondestructive testing. International received custody of the crank handle from Cunningham's counsel and retained it for over 30 days before notifying Cunningham's counsel that "[o]ur expert has concluded his inspection of the crank handle. . . ."

Approximately two years later, International requested that Cunningham produce the crank handle again for inspection by an expert metallurgist not employed by either defendant. The expert who previously examined the crank handle was an in-house engineer employed by International's co-defendant, Case Corporation.[13] Cunningham objected to the request, and International filed a motion to compel. The trial court denied the motion to compel and two subsequent motions for reconsideration filed by International.

After carefully reviewing the discovery history of this case, we cannot say that the trial court abused its discretion by denying International's motion to compel. Contrary to International's assertion, it had more than one opportunity to examine the crank handle. As the trial court recognized, the issue in this case was simple and known by International from the lawsuit's inception — did improper welding or materials cause the crank handle to fracture into two pieces? International made a tactical decision *not* to retain an outside metallurgist to answer this question at the time of its independent inspec-

---

[13] The trial court directed a verdict in favor of Case Corporation, and it is not a party to this appeal.

tion. Cunningham should not be held responsible if International failed to use its opportunities to examine the crank handle effectively, and International cannot now convert its own conduct into an abuse of discretion by the trial court. See *Gen. Motors*, supra, 237 Ga. App. at 430 (trial court did not abuse discretion in denying continuance in product liability case where defendant avoided "learning the facts by lack of thoroughness and then claim[ed] surprise"). Moreover, "[t]he trial court's discretion in dealing with discovery matters is very broad, and this court has stated on numerous occasions that it will not interfere with the exercise of that discretion absent a clear abuse." (Citation and punctuation omitted.) *Reeder v. Gen. Motors Acceptance Corp.*, 235 Ga. App. 617, 620 (3) (510 SE2d 337) (1998).

I am authorized to state that Judge Eldridge and Judge Phipps join in this dissent.

DECIDED JULY 31, 2000 —
RECONSIDERATION DENIED AUGUST 31, 2000 ▮▮▮▮▮▮▮▮

*Nelson, Mullins, Riley & Scarborough, Richard B. North, Jr., Donald L. Swift III, Hull, Towill, Norman, Barrett & Salley, Tara R. Simkins*, for appellant.

*Capers, Dunbar, Sanders & Bruckner, Paul H. Dunbar III, Ziva P. Bruckner*, for appellee.