## A91A1361. HARRISON v. THE STATE.
(411 SE2d 738)

ANDREWS, Judge.

Defendant Harrison, a former bail bondsman, appeals her convictions of two counts of criminal attempt to hinder the apprehension of a criminal and one count of attempt to commit bail jumping.[1]

Viewed in favor of the verdict, the evidence was that Harrison operated the All County Bonding Company which provided the majority of bonds written in Rockdale County. One of her competitors

---

[1] Defendant was acquitted of making a false statement to the police.

was Sue Cagle of Cagle Bonding Company. In July 1990, Deborah McKenzie was arrested in Rockdale County on a burglary charge for which Harrison posted the $1,500 bond. After McKenzie had been out on bond for a while, Harrison had her picked up by two employees and returned to jail and came off her bond, as the terms of the bond allowed. Harrison did this on the basis of tips she received which led her to believe McKenzie was going to leave the jurisdiction. After her return to jail, McKenzie was bonded out by Cagle on September 8, 1990. Cagle also posted her bond on a public drunk charge four days later.

On September 27, McKenzie called a local bar looking for a friend. The bartender asked who she was and then handed the phone to a man known as "Rambo," one of Harrison's skip tracers. Harrison then spoke with McKenzie and told her she would give her $2,000 and a ticket to skip bond on Cagle. McKenzie then called an airline for a ticket price and called Harrison back. Because the price was too high, Harrison suggested she call the bus station the following day. This conversation was not recorded, although a number of others were during the investigation.

McKenzie contacted Cagle about the offer and Cagle called the GBI, which initiated an investigation. A number of phone calls between Harrison and McKenzie were taped, as well as several meetings between the two. McKenzie, after consulting with Harrison, went to the Covington, Decatur, and Conyers bus stations over a period of days. Harrison met her at the Covington bus station, but found the station closed. Harrison called the bus company from her car phone and obtained information about the ticket purchase. She and McKenzie agreed to meet the next day at Decatur. Harrison did not appear, but informed McKenzie she was tied up with other business. On September 29, Harrison and McKenzie met at the Conyers bus station where Harrison purchased a one-way ticket to Los Angeles for McKenzie. All of the bus station meetings were taped and the Decatur and Conyers tapes were transcribed.

After purchasing the ticket, Harrison told McKenzie that if she got a California driver's license, to obtain it in a false name and that she needed a false birth certificate to get one. Harrison also advised her to call only from pay phones and not to write home for fear the letters could be traced. Finally, Harrison told McKenzie to call her in two or three months and she would check to see if McKenzie had been placed in N.C.I.C., the national crime information network. Harrison left the station before the bus arrived, leaving McKenzie waiting. McKenzie did not board the bus and the ticket was introduced at trial.

The first count of the indictment charged Harrison with attempt to hinder apprehension and punishment of McKenzie over the period

September 27 through September 29, 1990.

On October 3, McKenzie attempted to contact Harrison by phone, but only reached her answering service. McKenzie told the service to have Harrison at that number the next morning at 10:00 a.m., or she would call Cagle and return to Georgia.

Upon calling the next morning, McKenzie reached Harrison and told her she was in Corisicana, Texas and needed money. Harrison said she would consider the request.

Two investigators met Harrison at the jail on October 8, and had a conversation concerning McKenzie's whereabouts.[2]

On October 16, McKenzie again spoke with Harrison by phone and indicated she was considering returning to Georgia. Harrison discussed with her the fact that, after two years, Cagle would not look for her on the bond because of the expense and after that time, Cagle could not recover the bond amount. Harrison also explained that the district attorney would have to pursue extradition in order to bring her back and that, in her experience, for that small an amount, the district attorney would probably not do so because the cost of returning her would exceed the bond amount.

Count 2 of the indictment alleged attempting to hinder apprehension and punishment based on the events from October 4 through October 16. Count 3 charged attempt to commit bail jumping based on the purchase of the bus ticket and encouraging of McKenzie to leave Georgia and not appear for court dates.

1. On December 26, 1990, prior to trial beginning January 31, 1991, Harrison's present counsel made a motion for disclosure of "all tape recorded evidence" to be used by the State at trial and other tapes containing her voice. The motion also requested an in-camera inspection of the tapes to determine if they contained any exculpatory material. The in-camera review was conducted by the court and no such evidence was found.[3] Denial of pretrial disclosure of the tapes is enumerated as error on the basis it denied Harrison due process and the right to effective assistance of counsel under the United States and Georgia Constitutions.

The written motion did not seek to have the tapes reviewed by experts nor was any allegation made that the tapes had been tampered with or altered. The focus of the motion was that because Har-

---

[2] This conversation was the basis of Count 4, the false statement charge, of which Harrison was acquitted. During the conversation, Harrison told the agents McKenzie might be in Tennessee or Texas.

[3] Even if the court had refused the request for in-camera review of the tapes, since all were produced and played at trial, defendant would not be entitled to reversal solely on that basis. *Smith v. State*, 171 Ga. App. 758, 760 (2) (321 SE2d 213) (1984). Also, an accused's own non-custodial statements recorded on tape are not subject to discovery under a *Brady* request. *Fancher v. State*, 190 Ga. App. 438, 440 (3) (378 SE2d 923) (1989).

rison was "simply unaware of what she allegedly said," she could not prepare to explain the statements at trial without review of the tapes. Also, the motion stated that if the State intended to use transcripts, the defense had the right to hear the tapes and examine the State's transcripts for accuracy.

In *Sabel v. State*, 248 Ga. 10, 17-18 (6) (282 SE2d 61) (1981), the Supreme Court held that "[a] criminal defendant . . . is entitled on motion timely made to have an expert of his choosing, bound by appropriate safeguards imposed by the court, examine critical evidence whose nature is subject to varying expert opinion."

In *Carpenter v. State*, 252 Ga. 79, 80 (310 SE2d 912) (1984), the *Sabel* rationale was used to analyze a request for pretrial expert examination of tape recordings. The Supreme Court there concluded that the tapes were not "critical" evidence because the State's case included testimony of officers who overheard the conversations as they were being taped via an FM transmitter, along with notes between the accused and other parties to the conversations. Id. at 81. Similarly, here, McKenzie, the other participant in the conversations, testified,[4] as did the agents and Cagle who overheard some FM transmissions as well as McKenzie's side of some conversations. The bus company employee who sold the ticket identified Harrison as the one who purchased the ticket with cash and handed it to McKenzie. McKenzie and the agents who overheard the transmission testified similarly. During the trial of the case, the defense was allowed to hear the tape made of the face-to-face bus station meetings during a lunch break.

Since Harrison requested "all" the tapes, it is not clear that she carried her burden of making a specific and not general request for critical information. *Green v. State*, 250 Ga. 610 (1) (299 SE2d 544) (1983).

Harrison testified and acknowledged the phone calls and meetings with McKenzie and making some of the statements. She said she did not recall making others. Her defense was that she thought McKenzie was only leaving for a short while and Harrison had no intent to have her jump bail or leave permanently. She relied upon the defense of entrapment.

Here, we find no basis in the record for concluding that the tapes, which are included in the record and have been reviewed, were in fact subject to varying expert opinion. *Reinhardt v. State*, 197 Ga. App. 825, 826 (1) (399 SE2d 729) (1990). While defense counsel would have preferred to have had all the State's evidence before trial, and con-

---

[4] McKenzie, upon defense counsel's oral motion to be allowed to interview her, was personally interviewed by the judge who concluded that she was afraid of Harrison and did not wish to be interviewed.

tends that he could have presented a better defense if he had, the failure of the court to order the evidence produced before trial was not reversible error. Id. at 827. The fact that Harrison, the other participant in all of the taped events and conversations, was unable to adequately recall any of the events and assist her counsel in this way does not provide an adequate basis for the relief requested.

2. The second enumeration alleges that the denial of the motion for disclosure and inspection of the transcripts and tapes denied Harrison effective assistance of counsel under both United States and Georgia Constitutions. The effective assistance of counsel right was cited as a basis for the motion below.

Neither a motion for new trial nor a request for evidentiary hearing on the issue of ineffective assistance of counsel was made at the trial level. No factual showing was made by counsel as to how earlier availability of the tapes and transcripts would have changed trial strategy. *Dawson v. State*, 258 Ga. 380, 381 (3) (369 SE2d 897) (1988). Even if the contention is that counsel was ineffective as a matter of law on this ground, a hearing is still necessary in such a situation. See *Williams v. State*, 257 Ga. 311, 312 (2) (357 SE2d 578) (1987).

Counsel who made the motion below is appellate counsel. Defense counsel is precluded from presenting a claim of ineffective assistance of counsel concerning a trial in which he participated due to the ethical prohibition against a lawyer acting as a witness. *Dobbs v. State*, 199 Ga. App. 793, 796 (5) (406 SE2d 252) (1991); *McGuire v. State*, 185 Ga. App. 233, 238 (363 SE2d 850) (1987); see *Castell v. Kemp*, 254 Ga. 556 (331 SE2d 528) (1985).

"Although the defendant's right to raise ineffective assistance of counsel is not waived under these circumstances, we do not address it because the issue is not properly before this court for consideration." *Dobbs*, supra.

3. The argument made in the third enumeration was not presented to the court below and will not be considered here for the first time. *Barnwell v. State*, 197 Ga. App. 116, 118 (4) (397 SE2d 717) (1990). Moreover, the revamping of the discovery rules in criminal cases as apparently sought by Harrison is the province of the legislature, not this court.

4. At the close of the State's case, a motion for directed verdict was made by Harrison. Her fourth enumeration contends it was error to deny that motion as to count 3, the attempt to commit felony bail jumping. OCGA §§ 16-10-51 (a); 16-4-1.

The premise for the motion was that there was insufficient proof that Harrison knew or believed that McKenzie had received "actual notice" to appear in court on the burglary charge.

Although the motion was made only at the close of the State's evidence, on appeal we consider all the evidence. *Parker v. State*, 181

Ga. App. 590, 591 (1) (353 SE2d 83) (1987). This court determines whether there was legally sufficient evidence to support the verdict. *Causey v. State*, 154 Ga. App. 76, 77 (1) (267 SE2d 475) (1980).

OCGA § 16-10-51 (a) requires that a person who has been charged with a felony and set at liberty on bond, "after actual notice . . . or notice . . . by mailing to his last known address or otherwise being notified personally in writing by a court official . . . he fails without sufficient excuse to appear at that time and place."

An attempt requires a person to perform a substantial step toward the commission of the crime with the intent to commit that specific crime. OCGA § 16-4-1.

While Harrison focuses on claimed uncertainty as to the date when McKenzie was to appear on the burglary charge,[5] specificity of date is not necessary where, as here, the evidence showed that Harrison, having bailed McKenzie out on the felony burglary charge, was aware of its pendency and discussed with McKenzie how she would have notice of any court dates. Further, Harrison advised McKenzie that, whenever that date was, if McKenzie remained gone for two years from that time, the bonding company would quit looking for her. Harrison advised McKenzie to call her in April or May of 1991, after telling McKenzie that "[i]t (the burglary charge) won't even come up until like January or February [1991]."

The evidence was sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

5. Enumerations 5 and 6 deal with claimed infirmities in the sentence imposed.

Harrison was sentenced to two-and-a-half years to serve on Count 1, two-and-a-half years on Count 2, consecutive to the sentence on Count 1, and two-and-a-half years on Count 3, concurrent to Count 1. Harrison was also prohibited from participating in the bonding business.

At the time of the sentencing, no objection was made to the consecutive sentences, nor was any voiced as to the ban from the bonding business.

Here, Harrison contends the consecutive sentences were inappropriate because the charges on Counts 1 and 2 involved the same conduct and the dates of the conduct, alleged over different periods of time, were not alleged as material or essential elements. This argument was not made below, presenting nothing for our review. *Alonso v. State*, 190 Ga. App. 26, 30 (7) (378 SE2d 354) (1989); *Hill v. State*, 183 Ga. App. 654, 658 (4) (360 SE2d 4) (1987) (physical precedent).

---

[5] Three notices with different appearance dates were sent to McKenzie who was asked not to appear by the GBI as part of the continuing investigation.

Compare *State v. McCrary*, 259 Ga. 830 (1) (388 SE2d 682) (1990).

We note that the indictment here alleged two separate offenses, including different facts as well as different dates, upon which Harrison was properly sentenced consecutively. *Garrett v. State*, 147 Ga. App. 666, 667 (2) (250 SE2d 1) (1978), aff'd 243 Ga. 322 (253 SE2d 741) (1979); *Williams v. State*, 133 Ga. App. 66, 67 (4) (209 SE2d 729) (1974).

Finally, the court banned Harrison from engaging in the bonding business in Georgia. A sentence or portion thereof that is unauthorized by law is a nullity and void. *Mullins v. State*, 134 Ga. App. 243 (214 SE2d 1) (1975). Here, there was no probation, nor was any portion of the sentence suspended and defendant placed on probation. OCGA § 42-8-34 (c). Therefore, there was no probation to which to attach conditions, such as not engaging in a particular business, assuming the reasonableness of such a condition. *Parrish v. State*, 182 Ga. App. 247, 248 (2) (355 SE2d 682) (1987); *Grant v. State*, 176 Ga. App. 460 (1) (336 SE2d 354) (1985). This portion of the sentence is void and must be stricken upon return to the superior court.

*Judgment affirmed with direction. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED OCTOBER 10, 1991 —
RECONSIDERATION DENIED OCTOBER 23, 1991 — ▮▮▮▮▮▮▮▮

*Garland & Samuel, Edward T. M. Garland, Donald F. Samuel, Kathleen V. Duffield*, for appellant.
*Robert F. Mumford, District Attorney*, for appellee.