A98A0968. REEVES v. THE STATE.
(505 SE2d 540)

SMITH, Judge.

This case arises out of an escalating pattern of harassment and attacks on a former girlfriend by appellant Johnnie Reeves. The evi-

dence at trial authorized the jury to find that, despite attempts at intervention by judicial and law enforcement authorities, Reeves culminated his harassment of the victim by entering her house, threatening her with a knife, having sex with her against her will, stabbing her 14 times with various sharp objects, and fleeing in her car with her purse and keys.

Reeves was indicted by a Baldwin County grand jury on two counts of aggravated assault and one count each of armed robbery, aggravated stalking, obstruction of an officer, burglary, and criminal trespass. A jury acquitted him of burglary and one count of aggravated assault arising out of an earlier incident but found him guilty of the remaining charges. His motion for new trial was denied, and he appeals. Finding no error, we affirm.

1. Reeves raises the general grounds. Construed in favor of the jury's verdict, the evidence shows that after their relationship ended in February 1996, Reeves repeatedly threatened the victim, forcing his way into her house on at least two occasions, threatening her with a knife and attempting to stab her with a two-pronged fork, cutting her slightly.[1] As a result, she sought and obtained a protective order against him that forbade him to enter her premises. Reeves continued to harass and threaten her, parking his car across the street and prowling around her house and "beating on the side of the house" in the early morning hours. He also stole several items from her house and told her that he would return her property when she agreed to "take him back." The victim then took out a criminal trespass warrant against Reeves.

On April 17, 1996, the victim returned from work to find Reeves hiding behind a shed in her back yard. She told him to leave, he agreed and walked away, and she entered the house. A short time later, Reeves entered the house, threatened her with a knife, and forced her into her bedroom. He had sexual intercourse with her, then grabbed her around her neck and cut her with a knife. As she struggled, he stabbed her repeatedly with the knife, scissors, and a two-pronged fork until she passed out. When she regained consciousness, she went towards her front door and met Reeves going through her dining room. At the same time, a friend who had stopped by to check on her approached the front door and knocked. He heard a commotion inside, and the victim came to the front door and "fell into" him, bleeding profusely. The friend saw Reeves leaving through the kitchen, heard the back door slam, and saw Reeves back the victim's car out of the driveway and speed away. The victim sustained at

---

[1] This attack formed the basis of the aggravated assault charge on which Reeves was acquitted.

least 14 stab wounds to her neck, back, chest, arms, and abdomen, requiring surgery and the replacement of her total blood volume at least three times. The treating physician recounted the victim's potentially fatal wounds, including a chest wound that caused massive internal bleeding, a lacerated jugular vein, and five puncture wounds in her small bowel. The victim remained in the hospital for 46 days.

Within an hour of the attack, a fellow employee of Reeves was backing her car out of her parking space at work when Reeves grabbed the door handle, got in, lowered the seat back and "scooted down" in the seat. He told her that the police were looking for him because he had "f—ed up," and added, "I cut her. Yeah, I didn't mean to kill her, but I did cut her." He was carrying a white plastic grocery bag containing a woman's handbag, keys, and a billfold; the witness saw him going through the bag, taking money from inside the purse and putting it into his pocket. When Reeves left the car, he left the keys and billfold behind. The witness looked in the billfold and saw that it belonged to the victim; she turned it over to the police.

Later that evening, police on the lookout for Reeves answered a suspicious person call and discovered Reeves hiding in a patch of kudzu by the side of the road. He fled from the officers; they pursued on foot and captured Reeves after he ran off a 20-foot embankment in the dark. He told the police that the victim attacked him and he acted in self-defense. But other than a swollen arm from the fall, Reeves was uninjured; he had no cuts, scratches, or other defensive wounds on his body.

Reeves first argues that the trial court erred in refusing to direct a verdict on the charge of armed robbery because his violent attack on the victim was "based solely on jealousy." "Where, as here, the evidence is sufficient to authorize a finding that the theft was completed after force was employed against the victim, a conviction for armed robbery is authorized regardless of when the intent to take the victim's property arose, regardless of whether the victim was incapacitated and even if the victim had been killed instantly." (Citations, punctuation and emphasis omitted.) *Francis v. State*, 266 Ga. 69, 70 (463 SE2d 859) (1995). The evidence was clearly sufficient for a rational trier of fact to find Reeves guilty beyond a reasonable doubt of the offense of armed robbery under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

With respect to the remaining charges against Reeves, he argues only that the victim's testimony was unreliable and inconsistent and that the weight of the evidence did not support his conviction. But "[c]redibility is an issue for the jury. Appellate courts consider only the sufficiency not the weight of the evidence. [Cits.] The evidence was sufficient to authorize defendant's conviction under the standard

required by *Jackson v. Virginia*, [supra]." *Cross v. State*, 213 Ga. App. 275 (444 SE2d 589) (1994).

2. While Reeves acknowledges that the offenses of aggravated assault and armed robbery do not merge as a matter of law, *Brantley v. State*, 230 Ga. App. 651, 652 (2) (497 SE2d 399) (1998), he contends that in this instance they merge as a matter of fact. We disagree.

"The key question in determining whether a merger has occurred is whether the different offenses are proven with the same facts. For example, if one crime is complete before the other takes place, the two crimes do not merge. However, if the same facts are used to prove the different offenses, the different crimes merge. [Cit.]" *Taylor v. State*, 219 Ga. App. 475, 478 (4) (465 SE2d 473) (1995). "The offense of aggravated assault has two essential elements: (1) that an assault, as defined in OCGA § 16-5-20 be committed on the victim; and (2) that it was aggravated by . . . use of a deadly weapon. A person commits an assault under OCGA § 16-5-20 (a) (2) when the person commits an act which places another in reasonable apprehension of immediately receiving a violent injury. Intent to injure is not an element of aggravated assault with a deadly weapon when the assault element is predicated on OCGA § 16-5-20 (a) (2). If the pointing of the [weapon] placed the victim in reasonable apprehension of immediate violent injury, the felony of aggravated assault has occurred." (Citations and punctuation omitted.) *Matthews v. State*, 224 Ga. App. 407, 408 (1) (481 SE2d 235) (1997). Here, as in *Taylor*, the crimes do not merge because the assault was complete at the time Reeves threatened the victim with a knife and forced her into her bedroom. He then went on to stab the victim 14 times before taking her purse and keys. "Accordingly, the underlying facts used to prove each offense are different and the evidence showed that one crime was complete before the other occurred. [Cits.]" *O'Neal v. State*, 228 Ga. App. 162, 164 (491 SE2d 216) (1997). See also *Clay v. State*, 209 Ga. App. 266, 269 (3) (433 SE2d 377) (1993) (no merger when victim testified to sequential crimes accomplished by defendant with same knife).

3. The trial court also did not err in refusing to merge the aggravated assault with the aggravated stalking offense.[2] The offense of aggravated stalking was complete when Reeves confronted the victim at her home in violation of the protective order forbidding him to enter her premises. OCGA § 16-5-91 (a). As in Division 2, the jury was authorized to find Reeves guilty of both aggravated stalking and aggravated assault.

4. Reeves complains of the admission of photographs of the crime

---

[2] Contrary to the State's contention, Reeves did preserve this issue for review.

scene and the victim's injuries, contending they were repetitive, inflammatory, and without probative value. We disagree. "The law in Georgia is well-settled that photographs which are relevant and material to issues in a case are admissible and not excludable on the ground that they would inflame the minds of the jury. [Cit.]" *Carter v. State*, 244 Ga. 803, 804 (262 SE2d 109) (1979). It is not error to admit photographs that illustrate testimony, depict the extent, nature and location of the victim's wounds, or show the scene of the crime. *McKenzie v. State*, 248 Ga. 294, 298 (14) (282 SE2d 95) (1981); *Sanders v. State*, 257 Ga. 239, 242 (4) (357 SE2d 66) (1987). The photographs of the crime scene illustrate and corroborate the victim's account of the incident, which was called into question by Reeves. The trial court did not err in admitting the photographs.

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 10, 1998.

*Tom C. Moore*, for appellant.

*Fredric D. Bright, District Attorney, Stephen A. Bradley, Assistant District Attorney*, for appellee.