A05A1761. E-LANE PINE HILLS, LLC v. FERDINAND.

(627 SE2d 44)

PHIPPS, Judge.

After discovering that executions for unpaid taxes had been issued on a piece of property it owned in Fulton County, E-Lane Pine Hills, LLC brought this suit to enjoin Fulton County Tax Commissioner Arthur Ferdinand from selling or transferring the tax executions to third parties. E-Lane asserts that Ferdinand's authority for making such transfers was lost when OCGA § 48-3-19 was repealed. Ferdinand claims that OCGA § 9-13-36 continues to provide him with such authority. E-Lane appeals an order of the Fulton County Superior Court denying its request for interlocutory injunctive relief.[1] For reasons which follow, we vacate the order and remand for further proceedings.

E-Lane is a Georgia limited liability company located on Monroe Drive in Atlanta, Fulton County. In 1994, it purchased approximately four acres of land off West Roxboro Road, also in Atlanta, Fulton County. The property was subdivided and developed as a single-family subdivision. Afterward, E-Lane retained title to an irregularly-shaped .33-acre parcel that, according to E-Lane, is incapable of being developed under current zoning regulations. Ferdinand, however, claims that over $25,000 is due as a result of taxes not paid on the property.

E-Lane claims that the Fulton County tax assessor's office has erroneously valued this tract at over $130,000 and that, because it has not received any assessment notices, it has been denied the opportunity to appeal the valuations and has not paid the property taxes. Before bringing this suit, E-Lane learned that Ferdinand

---

[1] Ferdinand moves to dismiss this appeal, primarily because of E-Lane's failure to file an application for interlocutory appeal. Because all judgments or orders granting or refusing applications for interlocutory injunctions are directly appealable under OCGA § 5-6-34 (a) (4), and because Ferdinand has presented no other grounds supporting dismissal of this appeal, the motion to dismiss is denied.

intended to issue tax executions subject to transfer to third parties, after which E-Lane filed a real property tax return declaring the value of the property to be $10,000. E-Lane, thus, seeks to enjoin Ferdinand from selling or transferring to third parties any tax liens that he issues.

After filing its complaint, E-Lane moved for a temporary restraining order or interlocutory injunction prohibiting Ferdinand from selling, transferring, or otherwise conveying the tax executions. Following an unreported hearing, the court entered an order summarily denying such relief.

In 1872, the General Assembly enacted a statute authorizing third parties to pay "any execution issued for State, county, or municipal taxes" and thereby become entitled to transfer of the execution and enforcement of the same rights as might have been exercised before the transfer.[2] The 1872 statute became OCGA § 48-3-19. Beginning in the 1980s, OCGA § 48-3-19 was amended to provide numerous safeguards protecting the rights of the property owner following transfer of an execution issued for ad valorem property taxes.[3] OCGA § 48-3-19 was repealed in 2002.[4] According to E-Lane, the statute was repealed due to abuses stemming from the practice of selling ad valorem tax executions to private entities.

OCGA § 9-13-36 is a general statute similarly authorizing third parties to pay "any execution issued without the judgment of a court, under any law" and thereby become entitled to transfer of the execution and enforcement of pre-existing rights. OCGA § 9-13-36 does not, however, contain the numerous regulatory safeguards that were present in OCGA § 48-3-19.

OCGA §§ 48-3-19 and 9-13-36 were originally part of the same statute first enacted in 1872.[5] The 1872 Act provided

> [t]hat whenever any person, other than the person against whom the same has issued, shall pay any execution issued for State, county or municipal taxes, or any other execution issued without the judgment of a court, under any law, the officer whose duty it is to enforce said execution shall, upon the request of the party so paying the same, transfer said execution to said party, and said transferee shall have the

---

[2] Ga. L. 1872, p. 75, § 1.

[3] See Ga. L. 1988, p. 1363, § 2; Ga. L. 1989, p. 457, § 1; Ga. L. 1993, p. 1777, § 1; Ga. L. 1995, p. 282, §§ 1-3; Ga. L. 1997, p. 727, § 3; Ga. L. 1998, p. 128, § 48; Ga. L. 2000, p. 489, § 1; Ga. L. 2000, p. 1589, § 3.

[4] Ga. L. 2002, p. 1481, § 1.

[5] Ga. L. 1872, pp. 75-76, § 1.

same rights as to enforcing said execution and priority of payment as might have been exercised or claimed before said transfer.[6]

The 1872 Act thus applied to "any execution issued for State, county or municipal taxes, or any other execution issued without the judgment of a court, under any law." The 1872 Act became § 1145 of the Code of 1910.[7] When the Georgia Code was reorganized in 1933, the provisions of § 1145 relating to transfers of tax executions were decoupled from the provisions relating to transfers of other executions. That part of § 1145 allowing transfers of tax executions was placed in Code Ann. § 92-7602. That part of § 1145 relating to other executions was placed in Code Ann. § 39-403. The provisions of Code Ann. §§ 92-7602 and 39-403 were the same except that the former applied, as before, to "any execution issued for State, county, or municipal taxes." And the latter applied, also as before, to "any execution issued without the judgment of a court, under any law." In 1978, the Georgia Code was partially reorganized, and Code Ann. § 92-7602 became Code Ann. § 91A-324. The current Code transferred the provisions relating to tax executions to OCGA § 48-3-19, and the provisions relating to other executions were transferred to OCGA § 9-13-36.

E-Lane argues that the General Assembly never intended OCGA § 9-13-36 to apply to tax executions. In reliance on *Cawthon v. Douglas County*[8] and *Ga. Mental Health Institute v. Brady*,[9] E-Lane argues that to the extent that OCGA § 9-13-36 can be read as applying to tax executions, it was impliedly repealed by the amendments to and the repeal of OCGA § 48-3-19. We agree.

"While repeal by implication is not favored, a statute will be held to have repealed a prior statute where the latter is clearly inconsistent and contrary to the most recently enacted law or where the later enactment appears to cover the entire subject matter and give expression to the whole law on the subject."[10] "[I]n ascertaining the purpose of legislation, courts may look to the history of the legislation on the subject matter of the particular statute. [Cit.]"[11] And "any

---

[6] Id.

[7] See Code of 1910, p. 295.

[8] 248 Ga. 760 (286 SE2d 30) (1982).

[9] 263 Ga. 591 (436 SE2d 219) (1993).

[10] *Kyles v. State*, 254 Ga. 49, 50 (326 SE2d 216) (1985) (citations and punctuation omitted).

[11] *Brady*, supra, 263 Ga. at 592 (2) (a).

proposed construction of a statute must not result in unreasonable consequences and must square with common sense and sound reasoning. [Cit.]"[12]

*Cawthon* involved two Code provisions, both applicable to equity cases. One was contained in § 4847 of the Code of 1895, and the other was found in § 4849 of the same Code. The provision contained in § 4849 affirmatively granted a right to jury trial as to questions of fact in equity cases. In line with § 4849, the provision in § 4847 stated that if no issue of fact was involved in an equity case, the verdict of a jury was unnecessary. With the adoption of the Code of 1933, the provision in § 4849 was deleted and the provision in § 4847 was carried forward. Our Supreme Court in *Cawthon* interpreted repeal of the § 4849 provision as reflecting an intent to abolish the right to jury trial in equity cases and, accordingly, refused to read the provision in § 4847 as continuing to create a right to jury trial in equity cases by negative implication.[13]

*Brady* involved OCGA §§ 5-3-2 and 5-3-3, which generally govern appeals from probate court to superior court, and OCGA § 37-3-150, which governs appeals in civil commitment proceedings. OCGA §§ 5-3-2 and 5-3-3 generally allow either the plaintiff or the defendant to appeal any probate court decision to the superior court. An amendment to OCGA § 37-3-150 specifies that a mental health patient shall have the right to appeal any decision of the probate court; it does not specify whether a mental health facility that has filed an application for commitment of a patient has a right of appeal. In *Brady*, our Supreme Court concluded that "the General Assembly must have intended § 37-3-150 to exclusively control the parties who have a right to appeal from a commitment decision and for mental health facilities not to have that right."[14]

This case, like *Cawthon* and *Brady*, presents a situation involving the same right expressly guaranteed by the specific language of one statute and inferentially guaranteed by the general language of another. In *Cawthon*, the right was to a jury trial in an equity case; in *Brady*, the right was to appeal a probate court decision in a civil commitment proceeding; in this case, the right was to transfer a tax execution. The *Brady* court concluded that because the legislature intended the specific statute to occupy the whole law on its subject, repeal of the specific statute meant that the general statute no longer guaranteed the right even though it could have been interpreted as doing so by its literal terms. That is precisely the situation here.

---

[12] Id. at 593 (2) (b).

[13] *Cawthon*, supra, 248 Ga. at 761-764 (1).

[14] *Brady*, supra, 263 Ga. at 594 (2) (c) (footnote omitted).

OCGA § 48-3-19 was originally part of a single statute that applied to "any execution issued for State, county or municipal taxes, or any other execution issued without the judgment of a court, under any law." Clearly, the clause "any other execution issued without the judgment of a court, under any law" was intended to refer to executions other than tax executions. After the statute was decoupled, the "any other execution" part of the statute was carried forward in what is now OCGA § 9-13-36. And that part of the statute referring to "any execution" issued for state, county, or municipal taxes was placed in what was OCGA § 48-3-19, and numerous procedural safeguards protecting the rights of the property owner were put in it. Although OCGA § 9-13-36 by its broad terms can certainly be read as applying to tax executions, OCGA § 48-3-19 and its amendments clearly appeared to "give expression to the whole law on the subject" of tax executions.[15] We, therefore, find that the repeal of OCGA § 48-3-19 impliedly repealed OCGA § 9-13-36 insofar as it can be read to apply to tax executions.

"The trial court's task on application for interlocutory injunction is to balance the conveniences of the parties, to preserve the status quo, and to consider whether greater harm would result from granting or refusing the injunction."[16]

> Generally, the trial court has broad discretion to decide whether to grant or deny an interlocutory injunction. We will not disturb the trial court's decision absent a manifest abuse of that discretion. Where the trial court, in ruling on an interlocutory injunction, makes findings of fact based upon conflicting evidence, this court will not disturb the ruling as an abuse of discretion unless the denial or granting of the injunction was based on an erroneous interpretation of the law.[17]

Here, it would appear that the trial court's denial of E-Lane's request for interlocutory injunctive relief was based on an erroneous interpretation of the law. But because the hearing below was not reported, we cannot be certain. So, we vacate the order appealed and remand for further proceedings consistent with this opinion.

---

[15] *Kyles*, supra, 254 Ga. at 51.

[16] *Covington v. D. L. Pimper Group*, 248 Ga. App. 265, 266 (546 SE2d 37) (2001) (punctuation and footnote omitted); see also *Garden Hills Civic Assn. v. MARTA*, 273 Ga. 280, 281 (1) (539 SE2d 811) (2000) (likelihood of applicant's success on the merits also a factor in deciding whether to grant interlocutory injunction).

[17] *Covington*, supra, 248 Ga. App. at 266-267 (punctuation and footnotes omitted).

*Judgment vacated and case remanded. Andrews, P. J., and Mikell, J., concur.*

## On Motion for Reconsideration.

Tax Commissioner Ferdinand has moved for reconsideration of our decision. In support of Ferdinand's motion for reconsideration, Vesta Holdings, LLC, purchaser of millions of dollars of tax executions from tax commissioners throughout the state, has filed an amicus curiae brief. For a number of reasons, Ferdinand challenges our determination that, to the extent that OCGA § 9-13-36 can be read as applying to tax executions, it was impliedly repealed by the amendments to and the repeal of OCGA § 48-3-19.

Ferdinand first argues that in so holding we overlooked Article III, Section V, Paragraph IV of the 1983 Georgia Constitution, requiring a repealing Act to distinctly describe the law or Code section to be repealed. We have not overlooked this constitutional provision, as it has no application to implied repeals.[18]

Ferdinand next argues that *Cawthon v. Douglas County*[19] and *Ga. Mental Health Institute v. Brady*,[20] the two primary cases on which we relied in reaching our decision, did not involve implied statutory repeals. We cannot agree. The majority in *Cawthon* ultimately concluded that the repeal of one statutory provision evinced an intent by the legislature to restrict the literal application of the other.[21] The majority in *Brady* concluded that a series of amendments to a specific statute led inescapably to the conclusion that the legislature intended it to exclusively govern its subject matter.[22] This is precisely the conclusion we reached with respect to OCGA § 48-3-19, at least beginning with its 1988 amendments. That distinguishes *SRM Realty Svcs. Group v. Capital Flooring Enterprises*,[23] as well as earlier cases such as *Moore v. Heard*,[24] cited by Ferdinand in the motion for reconsideration.

The legislature "reserved" OCGA § 48-3-19 as part of the 2002 repeal, indicating an intent to revisit the subject matter covered by the Code section. As shown by Ferdinand in his motion for reconsideration, since 2002, bills have been introduced in the legislature that would have reenacted OCGA § 48-3-19 in a different form and that

---

[18] *Fortson v. Fortson*, 200 Ga. 116, 119-120 (35 SE2d 896) (1945).

[19] Supra.

[20] Supra.

[21] *Cawthon*, supra, 248 Ga. at 763-764 (1).

[22] *Brady*, supra, 263 Ga. at 593 (2) (a).

[23] 274 Ga. App. 595, 598 (1) (617 SE2d 581) (2005).

[24] 213 Ga. 711 (1) (101 SE2d 92) (1957).

would have amended OCGA § 9-13-36 to expressly provide that it does not apply to tax executions.[25] The fact that none of these bills was enacted into law does not alter our conclusion that the 2002 legislature must have intended the repeal of OCGA § 48-3-19 to restrict the operation of OCGA § 9-13-36 insofar as the latter Code section applied to the sales of tax executions.

On motion for reconsideration, Ferdinand also points out the legislature has not repealed OCGA § 48-3-20 (prescribing the interest to be paid on transferred tax executions). Although that does provide support for Ferdinand's argument that tax executions may still be transferred under OCGA § 9-13-36 notwithstanding OCGA § 48-3-19's repeal, it does not alter our considered conclusion that the legislature must have intended the repeal of OCGA § 48-3-19 to at least temporarily end the practice of tax officials or employees of tax officials transferring tax executions individually or in lot blocks to third parties with no interest in the properties, rather than to continue the practice without the safeguards contained in OCGA § 48-3-19 in place.

Finally, Vesta asks that we additionally hold that our decision applies only prospectively. That issue is not, however, properly before us as it has not been raised by the parties. Amicus curiae briefs are "limited to issues properly raised by the parties."[26]

*Motion for reconsideration denied.*

DECIDED DECEMBER 16, 2005 —
RECONSIDERATION DENIED FEBRUARY 13, 2006 — 

*Francis X. Moore,* for appellant.

*Bauer & Deitch, Henry R. Bauer, Jr., Vincent D. Hyman, Denval A. Stewart, Jennesia M. Primas,* for appellee.

*Proctor, Chambers & Hutchins, Robert J. Proctor, Bradley A. Hutchins, Adam C. Caskey, Judith A. Blackwell, Heyman & Sizemore, William B. Brown, Jacqueline Marcucci, Charles R. Bliss, Brock, Clay, Calhoun, Wilson & Rogers, Carlton L. Kell, Carol A. Callaway,* amici curiae.

---

[25] See HB 88 and HB 1196 introduced at the 2004 session of the General Assembly and HB 447 and HB 931 introduced at the 2005 session at http://www.legis.state.ga.us.

[26] Court of Appeals Rule 26.