### A06A1295. PLESS v. THE STATE.
(633 SE2d 340)

BLACKBURN, Presiding Judge.

Following a jury trial, Christopher Pless appeals his conviction on three counts of violating county animal control ordinances (two counts of failing to restrain his pit bull dogs and one count of allowing his dogs to become a public nuisance). He challenges the sufficiency of the evidence, questions the constitutionality of the county ordinance, and argues that the trial court erred in its rulings on evidence and on sentencing and further erred in finding he received effective assistance of counsel. For the reasons set forth below, we affirm in part and reverse in part.

---

[7] *Burns v. Burns*, 253 Ga. App. 600, 602 (560 SE2d 47) (2002).
[8] *Pless v. State*, 279 Ga. App. 798, 800 (2) (633 SE2d 340) (2006).

1. When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*.[1] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*.[2]

So construed, the evidence shows that in February 2004, in April 2004, and on several other occasions in this time frame, one or more of Pless's five pit bull dogs were running unrestrained and loose in neighbors' yards and garages. They frightened children and adults and barked aggressively. In addition to these repeated events, on July 14, 2004, two of these dogs ran unrestrained onto a neighbor's property, acting aggressively and not allowing the neighbor to exit her porch. Furthermore, on August 1, 2004, two of these dogs ran unrestrained onto that same neighbor's property, chasing and frightening the neighbor's horses. Witnesses testified that to their knowledge, on none of these occasions had any outsider gone onto Pless's property and set the animals free.

Pless was charged with twice violating Henry County Ordinance § 3-4-7 (2), in that he failed to keep his dogs under restraint, with one incident specified on July 14 and the other on August 1, 2004. He was further charged with violating Henry County Ordinance § 3-4-7 (5), in that he allowed his dogs to become a public nuisance (as defined in Henry County Ordinance § 3-4-2). At trial, he claimed that his dogs were always kept under restraint (specifically on July 14 and August 1), and that, to the extent the dogs had ever been unrestrained, someone must have come onto his property and set them free.

The jury found him guilty on all counts, and the court sentenced him to one day in prison and 179 days of probation, with a $250 fine on each count and an order to reimburse the county $1,226 for his court-appointed attorney fees. Pless moved for a new trial, asserting among other things ineffective assistance of counsel. Finding after a hearing that Pless received effective assistance from his counsel, the court denied the motion for new trial, giving rise to this appeal.

The evidence sufficed to sustain the convictions. Henry County Ordinance § 3-4-7 (2) makes it unlawful for an owner to "[f]ail to keep an animal under restraint." An animal is under restraint only if it is (a) secured by a leash or lead with a collar, (b) enclosed by way of a fence or other enclosure, or (c) under the supervision of a responsible and competent person at least 16 years old and obedient to the

---

[1] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

person's commands, or (d) if a dog is being trained or hunted in conformance with the game laws of Georgia. Henry County Ordinance § 3-4-2. Witnesses testified that on July 14 and August 1, 2004, two of Pless's dogs were running loose in a neighbor's yard, thus sustaining Pless's conviction on the two charges of violating Henry County Ordinance § 3-4-7 (2).

Henry County Ordinance § 3-4-7 (5) makes it unlawful for an owner to "[a]llow any animal to become a public nuisance." "Public nuisance" is defined, among other things, as any animal which "[i]s found repeatedly at large." Henry County Ordinance § 3-4-2. Here, evidence showed that in the months prior to the July 14 and August 1 incidents, Pless's dogs were repeatedly found loose in neighbors' yards and garages. Accordingly, evidence supported the conviction on the charge of allowing an animal to become a public nuisance under § 3-4-7 (5).

2. Pless contends that Henry County Ordinance § 3-4-7 (5) regarding allowing an animal to become a public nuisance is unconstitutionally vague. However, Pless did not raise this issue in the trial court below. Because "the issue of the statute's constitutionality was not raised below or ruled on by the trial court, . . . it cannot be considered on appeal." *Davis v. State*.[3] See *In re L. C.*[4] (appellate court " 'will not rule on a challenge to the constitutionality of a statute unless the issue has been raised and ruled on in the trial court' ").

Setting aside that Pless's enumeration of error does not address the following matter, we note that Pless further contends that the indictment failed to specify in what manner his dog was a public nuisance. If Pless wanted greater specificity with regard to the crime that he allegedly committed, his appropriate remedy was a pre-trial special demurrer. *Lowe v. State*.[5] Raising the issue for the first time on appeal is too late. *Croft v. State*.[6]

3. Pless argues that the court erred in admitting a similar transaction from April 2004, in which Pless was charged with failing to keep his pit bull dogs under restraint. Citing *Hoffer v. State*,[7] Pless contends that such similar transaction evidence was not relevant to show intent since the relevant Henry County ordinances were strict liability crimes, which required no showing of intent.

The complained-of evidence came from the same neighbor, who testified that on April 22, 2004, several of Pless's pit bull dogs were running unrestrained on her yard that day, leading her to call animal

---

[3] *Davis v. State*, 238 Ga. App. 84, 88 (5) (517 SE2d 808) (1999).

[4] *In re L. C.*, 273 Ga. 886, 889 (2) (548 SE2d 335) (2001).

[5] *Lowe v. State*, 276 Ga. 538, 539 (2) (579 SE2d 728) (2003).

[6] *Croft v. State*, 278 Ga. App. 107, 109 (3) (628 SE2d 144) (2006).

[7] *Hoffer v. State*, 192 Ga. App. 378, 380 (1) (384 SE2d 902) (1989).

control. The responding animal control officer testified that he found one of the dogs unrestrained and accordingly issued Pless a citation.

Pless's characterization of this incident solely as a similar transaction ignores that this evidence helped establish that he allowed his dogs to become a public nuisance by repeatedly being found at large. Proof of such "at large" incidents that took place within the two years prior to the November 2004 accusation filed against Pless were relevant to show the charge of allowing the dogs to become a public nuisance. See *Green v. State*[8] (" 'evidence of guilt . . . may extend to any day previous to the [accusation] and within the statute of limitation for the prosecution of the offense' "). See also OCGA § 17-3-1 (d) (two-year statute of limitation for misdemeanors). Whether this evidence also constituted a similar transaction showing bent of mind or course of conduct relating to the July 14 and August 1 "failure to restrain" charges does not diminish its admissibility as proof of the "public nuisance" charge.

Furthermore, the evidence was certainly admissible as a prior difficulty between Pless and his neighbor. As stated in *Appling v. State*:[9]

> Unlike similar transactions, prior difficulties between the parties are not independent acts or occurrences, but are connected acts or occurrences arising from the relationship between the same people involved in the prosecution and are related and connected by such nexus. Evidence of a defendant's prior act toward the same victim . . . is admissible as evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted.

Finally, even in strict liability cases, prior similar acts may be admissible to show course of conduct or bent of mind. *Putman v. State*.[10] We conclude that the trial court did not abuse its discretion in admitting this evidence. See *Brooks v. State*[11] (applying an "abuse of discretion" standard to admission of similar transaction evidence).

4. Pless contends that the trial court erred in excluding evidence of prior difficulties between Pless and his neighbors, which evidence was supposedly found in police reports. Specifically, Pless claims he

---

[8] *Green v. State*, 249 Ga. App. 546, 551 (1) (e) (547 SE2d 569) (2001).

[9] *Appling v. State*, 246 Ga. App. 556 (541 SE2d 129) (2000).

[10] *Putman v. State*, 257 Ga. App. 902, 904-905 (1) (c) (572 SE2d 412) (2002).

[11] *Brooks v. State*, 230 Ga. App. 846 (1) (498 SE2d 139) (1998).

should have been allowed to introduce various police reports showing he had called police to investigate his complaints that unidentified persons had trespassed on his property over a period of time, during which trespasses they took pictures, opened doors, killed animals, and let animals loose.

Pless's argument fails for the simple reason that police reports showing prior incidents are generally, by themselves, inadmissible hearsay with no probative value. *Fernandez v. Ga. Theatre Co. II.*[12] The narrative portions of such reports, which is what Pless sought to introduce here, are "not facts that should properly be admitted under the business records exception to the hearsay rule." *Brown v. State.*[13] Moreover, Pless was unable to identify any of his alleged persecutors from these prior incidents, which incidents were therefore irrelevant in proving prior difficulties with his neighbors. Finally, Pless testified at length to all of these incidents at trial, and thus the police reports would have been cumulative in any case. The trial court did not abuse its discretion in excluding the reports. See *Watson v. State*[14] (applying "abuse of discretion" standard to decision to exclude evidence).

5. Pless claims that the trial court erred in denying his motion for new trial, in which he asserted he received ineffective assistance of counsel. He urges that his trial counsel erred in failing to (i) subpoena the officers who wrote the police reports discussed in Division 4, (ii) call Pless's wife as a witness to the incidents reported in the police reports, and (iii) file a special demurrer to the indictment.

To prevail on his claim before the trial court, Pless bore the burden of showing both that his counsel's performance was deficient and that the deficient performance was prejudicial to his defense. See *Strickland v. Washington.*[15] As evidence supported the trial court's finding that Pless failed to bear this burden on any of the allegations of deficient performance, the trial court did not clearly err in denying his claim of ineffective assistance. See *Morris v. State*[16] (applying "clearly erroneous" standard to trial court's findings on ineffective assistance of counsel).

(a) *Failure to subpoena officers.* Pless first argues that his trial counsel failed to subpoena the officers who authored the police reports regarding his complaints about troubles with unidentified strangers at his property. As discussed in Division 4 above, these police reports were inadmissible hearsay and were irrelevant in any case. Pless's trial counsel testified that based on his interviews with

---

[12] *Fernandez v. Ga. Theatre Co. II*, 261 Ga. App. 892, 893 (583 SE2d 926) (2003).

[13] *Brown v. State*, 274 Ga. 31, 33-34 (1) (549 SE2d 107) (2001).

[14] *Watson v. State*, 278 Ga. 763, 771 (10) (604 SE2d 804) (2004).

[15] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[16] *Morris v. State*, 280 Ga. 184, 185 (2) (625 SE2d 391) (2006).

the officers, he concluded that they did not remember anything helpful regarding the incidents and that they witnessed nothing firsthand. Moreover, Pless was able to testify to the incidents. Therefore, trial counsel decided as a matter of trial strategy not to subpoena the officers. Strategic decisions not to call certain witnesses, made after thorough investigation, are virtually unchallengeable and do not constitute deficient performance. *Johnson v. State.*[17]

(b) *Failure to call Pless's wife.* Similarly, Pless's trial counsel testified that based on his interview of Pless's wife regarding her memory of the various incidents, he did not call her as a witness because her testimony was not needed, was not relevant, and was not in his client's best interest. Thus, the trial court could also discount this allegation as a ground for ineffective assistance of counsel.

(c) *Failure to file a special demurrer.* Finally, Pless claims that his trial counsel erred in failing to specially demur to the accusation, which accusation did not specify the precise method in which Pless allowed his dog to become a public nuisance. Because the State could have simply recharged Pless in a later more specific accusation, "the failure to file a special demurrer . . . would not support a finding of the violation of the constitutional right to effective legal representation. *Wallace v. State.*"[18] *Cotton v. State.*[19]

6. Pless challenges his sentence on two grounds. First, arguing that the same facts proved each, he claims that the court should have merged the three charges into one charge. Second, he claims that the court failed to make the findings of fact required before ordering him to reimburse the county for his court-appointed attorney fees.

The trial court is not required to merge counts that are for sequential crimes. *Cutter v. State.*[20] Where the evidence shows that one crime was complete before the other occurred, the crimes do not factually merge. *Reeves v. State.*[21] Here, the "public nuisance" crime, shown by Pless's dogs being repeatedly found at large, was complete based on the various incidents that occurred prior to the July 14 and August 1 "failure to restrain" crimes. Thus, no merger was required. Taking place over a period of several months and separated by weeks, these incidents and crimes did not necessarily constitute a single or continuing course of conduct that could only be punished as one offense. Compare *McKee v. State*[22] (failure to obtain medical care

---

[17] *Johnson v. State*, 274 Ga. App. 641, 644 (4) (618 SE2d 716) (2005).

[18] *Wallace v. State*, 253 Ga. App. 220, 222 (3) (558 SE2d 773) (2002).

[19] *Cotton v. State*, 279 Ga. 358, 361 (5) (613 SE2d 628) (2005).

[20] *Cutter v. State*, 275 Ga. App. 888, 889 (1) (622 SE2d 96) (2005).

[21] *Reeves v. State*, 233 Ga. App. 802, 805 (2) (505 SE2d 540) (1998).

[22] *McKee v. State*, 275 Ga. App. 646, 650-651 (5) (621 SE2d 611) (2005).

for a child over a period of four consecutive days constituted a single course of conduct spanning four days, not a separate offense for each day; merger required).

Regarding the court's requirement that Pless reimburse the county the fees incurred in paying for his court-appointed attorney (or to do community service instead), we note that Pless represented to the court that he had sufficient means to pay this amount. Nevertheless, we must reverse the imposition of these fees on the ground that the governing statute was struck prior to trial and its replacement does not contain any provisions authorizing a trial court to order a defendant to reimburse his court-appointed attorney fees. Former OCGA § 17-12-10 (c), which authorized a trial court to order reimbursement under certain circumstances (see *Fowler v. State*[23]), was struck by the Georgia Indigent Defense Act of 2003, effective on December 31, 2003. Ga. L. 2003, p. 191, § 1. Because the new statute contains no provision authorizing such reimbursement, the trial court lacked the authority to do so when it tried and sentenced Pless in May 2005 for crimes committed in 2004.[24] Accordingly, we must reverse that portion of the sentence requiring Pless to reimburse the county $1,226 in attorney fees. The remainder of the sentence is affirmed.

*Judgment affirmed in part and reversed in part. Mikell and Adams, JJ., concur.*

ON MOTION FOR RECONSIDERATION.

The State has moved for reconsideration, arguing that this Court erred in reversing that portion of Pless's sentence that required Pless to reimburse the county $1,226 in attorney fees. As set forth above, we reasoned that because the governing statute was struck prior to trial, and because its replacement did not contain any provisions authorizing a trial court to order a defendant to reimburse his court-appointed attorney fees (see former OCGA § 17-12-10 (c); Ga. L. 2003,

---

[23] *Fowler v. State*, 184 Ga. App. 177, 178 (360 SE2d 918) (1987).

[24] The same 2003 Act also struck a related provision (former OCGA § 17-12-40), which had authorized counties to *recover* such ordered payments. Ga. L. 2003, p. 191, § 1. Although this provision was not struck until January 1, 2005 (and thus was in effect at the time of the crimes), this provision did not purport to authorize a court to order such payments in a sentence. Even if this provision could be seen as authority for such, it still would not help the State here. A defendant is sentenced according to the sentencing law in effect at the time he committed his crimes (see *Lockhart v. State*, 227 Ga. App. 481, 483 (489 SE2d 594) (1997)), but new sentencing provisions that pertain to procedural rights may apply ex post facto. *Cannon v. State*, 246 Ga. 754, 755 (1) (272 SE2d 709) (1980). Inasmuch as this provision pertained to the administrative matter of government recovery of funds expended for indigent criminal defense, such is clearly procedural; thus, the new statute, which struck this provision, applied at Pless's May 2005 sentencing.

p. 191, § 1), the trial court lacked the authority to impose this as a condition of probation. We deny the State's motion for the reasons set forth below.

1. The State first argues that Pless waived this defect in his sentence when he acknowledged to the trial court that he had sufficient funds to pay the attorney fees and when he further failed to object to the imposition of the attorney fees below. However, "[a] sentence or portion thereof that is unauthorized by law is a nullity and void." *Harrison v. State.*[25] Thus, where no law authorizes the imposition of restitution ordered in a sentence (*Washington v. State*[26]), or where a condition of probation in a sentence is unauthorized (*Brady v. State*[27]), that portion of the sentence is void. A void sentence " 'may be so held in any court where it becomes material to the interest of the parties to consider it,' " regardless of a lack of objection in the trial court. *Kinney v. State.*[28]

Here, we held that the portion of the sentence requiring Pless to reimburse the county for the fees of his court-appointed counsel was without authorization. As such, that portion of the sentence was void and a nullity. Pless's acquiescence to his illegal sentence "cannot render an otherwise illegal sentence valid through waiver." *Sanders v. State of Ga.*[29] Thus, the issue was properly before this Court, despite the lack of an objection below.

2. The State advances three arguments to show that the trial court had the authority to impose the reimbursement of the attorney fees as a condition of the probationary sentence. All three arguments lack merit.

(a) *The court could impose the attorney fees as a part of the costs.* The State first argues that the court could impose the attorney fees on Pless under its authority to assess costs against convicted defendants. See OCGA § 17-11-1 ("[i]f convicted, judgment may be entered against the defendant for all costs accruing in the committing and trial courts and by any officer pending the prosecution"). This argument fails.

Because costs in criminal cases were unknown at common law, no liability for costs exists in the absence of express statutory authorization. *Walton County v. Dean.*[30] "All officers charging costs, and

---

[25] *Harrison v. State*, 201 Ga. App. 577, 583 (5) (411 SE2d 738) (1991).

[26] *Washington v. State*, 251 Ga. App. 206, 211-212 (3) (553 SE2d 855) (2001).

[27] *Brady v. State*, 246 Ga. App. 412, 413 (541 SE2d 396) (2000), superseded by statute, *Beaton v. State*, 255 Ga. App. 901, 905 (6) (567 SE2d 113) (2002).

[28] *Kinney v. State*, 234 Ga. App. 5, 8 (2) (505 SE2d 553) (1998).

[29] *Sanders v. State of Ga.*, 259 Ga. App. 422, 423 (1) (577 SE2d 94) (2003).

[30] *Walton County v. Dean*, 23 Ga. App. 97, 99 (97 SE 561) (1918).

exacting its payment from the pocket of the citizen, must always show the authority of the law to do so." (Punctuation omitted.) Id. See *Holloway v. State.*[31]

Under Georgia law, generally " '[c]osts' does not include attorney fees." *Lawhorne v. Soltis.*[32] As explained in *Bearden v. City of Austell:*[33]

> The term "costs," as applied to proceedings in a Court of Justice, has, in the acceptation of the profession, and by the practice of all Courts in Georgia, a well understood meaning. It includes all charges, fixed by statute, as compensation for services rendered by officers of the Court in the progress of the cause. *It does not embrace fees, to which counsel prosecuting or defending may be entitled.* The courts in Georgia have consistently held that attorney fees are not recoverable unless specifically provided for by statute or contract.

(Citation and punctuation omitted; emphasis supplied.)

Thus, we hold that the "costs" authorized by OCGA § 17-11-1 do not include attorney fees.

(b) *The court could impose the attorney fees under restitution statutes.* The State next argues that statutes authorizing restitution empowered the court to impose the attorney fees. We disagree.

OCGA § 17-14-3 (b) authorizes a trial court to order an offender to make full restitution to any victim as a condition of probation. Under the definition set forth in OCGA § 17-14-2 (2), such restitution can only be for damages "which a victim could recover against an offender in a civil action . . . based on the same act or acts for which the offender is sentenced, except punitive damages and damages for pain and suffering, mental anguish, or loss of consortium." In civil actions, attorney fees are not generally recoverable as a part of the damages. *Lawhorne,* supra, 259 Ga. at 504 (3). The exception to this rule, where the defendant has acted in bad faith, or has been stubbornly litigious or has caused the plaintiff unnecessary trouble and expense, clearly does not apply in this particular criminal action involving strict liability. See OCGA § 13-6-11.

Nor does OCGA § 42-8-35 (a) (7), which concerns restitution that may be imposed as a condition of probation, authorize attorney fees here. This statute empowers a court to require a probationer to "[m]ake reparation or restitution to any aggrieved person for the

---

[31] *Holloway v. State,* 178 Ga. App. 141, 142-143 (3) (342 SE2d 363) (1986).

[32] *Lawhorne v. Soltis,* 259 Ga. 502, 504 (3) (384 SE2d 662) (1989).

[33] *Bearden v. City of Austell,* 212 Ga. App. 398, 400 (4) (441 SE2d 782) (1994).

damage or loss caused by the probationer's offense, in an amount to be determined by the court." "Damage or loss" does not normally include the expenses of litigation or attorney fees, and we decline to read that meaning into the statute here.

For these reasons and for the reasons also set forth in subdivision (c) below, the restitution statutes do not authorize the trial court to impose attorney fees for court-appointed counsel as a part of the sentence.

(c) *The court could impose the attorney fees under its general power to impose reasonable conditions on probationers.* Finally, the State claims that the general power of the trial court to impose reasonable conditions on probationers authorized the imposition of attorney fees here. Once again, we disagree.

OCGA § 42-8-35 sets forth the terms and conditions a court may impose as a condition of probation. Nowhere in this Code section is there any authority to impose the fees of court-appointed attorneys. "This Code section, however, is not exclusive in its provisions but the court has authority to impose restrictions not specifically listed therein." (Punctuation omitted.) *Kellam v. State.*[34] Indeed, "[i]n the absence of express authority to the contrary, we see no logical reason why any reasonable condition imposed for probation or suspension of a sentence by a trial court should not be approved." *State v. Collett.*[35]

Here, we are dealing with attorney fees, which "are not recoverable unless *specifically* provided for by statute or contract." *Bearden,* supra, 212 Ga. App. at 400 (4). Former OCGA § 17-12-10 (c) (2003) expressly authorized the trial court to require certain defendants to reimburse the county for the attorney fees of their court-appointed counsel. We interpreted the statute strictly so as to require the court to first make a factual determination in the record that the defendant was able to pay for the employment of an attorney, which could include findings regarding the amount of the defendant's assets, expenses, income, or outstanding obligations. See *Burns v. State;*[36] *Hall v. State;*[37] *Fowler v. State.*[38]

This detailed procedure (authorized by statute and delineated by case law), which protected the rights of the defendant by requiring certain findings before he was required to reimburse attorney fees and which appeared to occupy the field, was abolished by the General Assembly when it enacted the Georgia Indigent Defense Act of 2003. Ga. L. 2003, p. 191, § 1. The new statute repealed former OCGA

---

[34] *Kellam v. State,* 271 Ga. App. 125, 126 (608 SE2d 729) (2004).

[35] *State v. Collett,* 232 Ga. 668, 670 (208 SE2d 472) (1974).

[36] *Burns v. State,* 251 Ga. App. 889, 891-892 (2) (555 SE2d 209) (2001).

[37] *Hall v. State,* 189 Ga. App. 824, 825 (2) (377 SE2d 907) (1989).

[38] *Fowler v. State,* 184 Ga. App. 177, 178 (360 SE2d 918) (1987).

§ 17-12-10 in its entirety and substituted in no provision authorizing such reimbursement. Where the legislature has enacted a specific procedure authorizing the reimbursement of court-appointed attorney fees by defendants under certain circumstances, the express repeal of that statute would clearly indicate the legislature's intent to revoke the authority to impose such fees as a part of the sentence, regardless of the fact that such reimbursement may be implicitly authorized by the general powers of the court to impose reasonable conditions on probationers (or, speaking hypothetically, by general restitution powers authorized by other statutes). Such general powers existed before the enactment of the specific statute governing reimbursement, but the legislature found it necessary to expressly authorize the courts to order reimbursement in a statute specifically addressing the matter. The subsequent repeal of that statute would mean that the legislature intended that the authority was now revoked.

This analysis is supported by at least two cases. In *Cawthon v. Douglas County*,[39] the Supreme Court of Georgia noted that in enacting the 1933 Code, the General Assembly repealed a statute that expressly authorized juries to determine questions of fact in equity cases. Even though another unrepealed statute indicated that the courts may still have had the authority to have juries decide fact questions in equity cases, *Cawthon* held that the repeal of the express statute showed the legislature's intent to revoke this authority, and the Court declined to read that authority into the remaining statute by implication. Id. at 763-764 (1).

In *Ga. Mental Health Institute v. Brady*,[40] the Supreme Court of Georgia considered OCGA §§ 5-3-2 and 5-3-3, which generally govern appeals from probate court to superior court, and OCGA § 37-3-150, which governs appeals in civil commitment proceedings. OCGA §§ 5-3-2 and 5-3-5 generally allow either party to appeal any probate court decision to the superior court. OCGA § 37-3-150, whose predecessor statute (now repealed) specifically authorized applicants for commitment (such as mental health facilities) to appeal adverse decisions, omitted that language in its subsequent version and instead specified that a mental health patient shall have the right to appeal any decision of the probate court; it did not specify whether a mental health facility that has filed an application for commitment of a patient has a right of appeal. *Brady* concluded that "the General Assembly must have intended § 37-3-150 to exclusively control the parties who have a right to appeal from a commitment decision and

---

[39] *Cawthon v. Douglas County*, 248 Ga. 760, 762-763 (1) (286 SE2d 30) (1982).
[40] *Ga. Mental Health Institute v. Brady*, 263 Ga. 591, 594 (2) (c) (436 SE2d 219) (1993).

for mental health facilities not to have that right." *Brady*, supra, 263 Ga. at 594 (2) (c). Because the legislature intended the specific statute to occupy the whole law on its subject, *Brady* held that the subsequent repeal of the specific statute meant that the general statutes (OCGA §§ 5-3-2 and 5-3-3) no longer guaranteed the right even though they could have been interpreted as doing so by their literal terms. Id.

This case, like *Cawthon* and *Brady*, presents a situation involving the same authority expressly granted by the specific language of one statute (former OCGA § 17-12-10 (c)) and inferentially granted by the general language of another (OCGA § 42-8-35). As in *Cawthon* and *Brady*, the subsequent repeal of the specific statute revoked the authority, even though the authority could have been interpreted as being available under the general statute and associated court decisions. See also *E-Lane Pine Hills v. Ferdinand*.[41] Accordingly, in light of the repeal of former OCGA § 17-12-10 (c), the general probationary powers of a court do not authorize a trial court to require a defendant to reimburse the attorney fees of court-appointed counsel.

*Motion for reconsideration denied.*

DECIDED MAY 10, 2006 —
RECONSIDERATION DENIED JUNE 15, 2006 — 

*E. Suzanne Whitaker*, for appellant.
*Charles A. Spahos, Solicitor-General, Leonard M. Geldon, Gilbert A. Crosby, Assistant Solicitors-General*, for appellee.

---

[41] *E-Lane Pine Hills v. Ferdinand*, 277 Ga. App. 566, 568-570 (627 SE2d 44) (2006).